NORTHERN PAC. R. CO. v. MURRAY.

. (Circuit Court of Appeals, Ninth Circuit.   May 9, 1898.)

No. 372.

1. RAILROAD RIGHT OF WAY — DEFINITE LOCATION OF NORTHERN PACIFIC — RIGHTS OF SETTLERS.

   Act July 2, 1864, § 3, makes the grant to the Northern Pacific Railroad Company definite, taking effect from the date of the act, when the line of road is definitely fixed by the company, and a plat thereof filed in the general land office.   *Held* that, when the company thus signified its location of any portion of its line, it was concluded thereby, and, if it afterwards constructed its road on a different line, it must procure a right .of way by purchase or condemnation proceedings, where private rights had intervened.

2. SAME — LIABILITY FOR COMPENSATION — TRANSFER OF LAND.

   The liability of a railroad company to make compensation for land taken for right of way is to the owner of the land at the time of the taking, 'and a subsequent vendee has no right of action unless the same is specially assigned to him.

3. SAME — ENTRY WITHOUT RIGHT — ACQUIESCENCE OF OWNER — REMEDY.

   Where a landowner, knowing that a railroad company has entered upon his land and is constructing its road without having procured the right of way, remains inactive until the road is in operation, he cannot maintain ejectment for the entry, but is restricted to an action for damages.

4. SAME — AMENDMENT OF COMPLAINT — WAIVER OF EXCEPTION.

   Plaintiff brought ejectment against defendant railroad company for land upon which it had wrongfully entered and constructed its road.  The court decided that the action would not lie, but, upon plaintiff's request, permitted him to file an amended complaint for damages only.  *Held* that, by electing to amend, plaintiff waived his right to a review of the question as to his right to maintain the action in its original form, and was not aided by a stipulation agreeing that such question should be submitted to. the court of appeals.

In Error to the Circuit Court of the United States for the Western Division of the District of Washington.

This was an action by David Murray against the Northern Pacific Railroad Company to recover for land.taken for a right of way.  Judgment below was given for plaintiff, and defendant brings error.

Crowley & Grosscup, for plaintiff in error.

Parsons, Parsons & Parsons and Carroll B. Graves, for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and BELLINGER, District Judge..

BELLINGER, District Judge.   This action grows out of the construction and maintenance by the Northern Pacific Railroad Company of its branch line from Yakima to Swank Creek, in the state of Washington, upon lands claimed by the defendant in error.   By section 2 of the act of congress of July 2, 1864, creating the Northern Pacific Railroad Company, it is provided as follows:

"Sec. 2. * * * the right of way through the public lands be and the same is hereby granted to said Northern Pacific Railroad Company, its successors and assigns, for the construction of a railroad and telegraph as proposed; and the right, power and authority is hereby given to said corpora-

tion to take from the public land adjacent to the line of said road, material of earth, stone, timber and so forth, for the construction thereof. Said way is granted to said railroad to the extent of two hundred feet in width on each side of said railroad where it may pass through the public domain."

At the date of the passage of this act the lands in dispute were unoccupied public lands of the United States. On May 10, 1884, the railroad company definitely located its branch line of road from Yakima to Swank Creek, and on May 24th filed a plat of such location in the office of the commissioner of the general land office, which was approved by the secretary of the interior; and on January 8, 1885, the lands so located were withdrawn from sale. Subsequent to the grant, and prior to the definite location of the line of road, on July 5, 1873, one Frederick Ludi received a patent for a portion of the tract including the land now used for right of way by the company, in accordance with steps theretofore taken by him to that end; and on June 5, 1873, one William Berry in like manner received a patent for the tract which includes the remaining portion of the lands in dispute. The defendant in error succeeded to these titles in 1888, through one Smith, grantee of Ludi and Berry. In the year 1886 the railroad company built its road on the lands in dispute, and has since maintained and operated it there. But the line so constructed and maintained is not upon the line as definitely located in 1884. It is conceded that a definite location of a line of road takes effect, as to the right of way, by relation from the date of the grant.

The first question to be considered is whether the grant of right of way is fixed by the location of the road as constructed, without reference to variations of such location from that shown by maps filed in the land office by the grantee company. If so, the company has a right of way, effective by relation from July 2, 1864, the date of the granting act, and has priority over the title under which the defendant in error claims. By section 3 of the granting act, the grant becomes definite when the line of road is definitely fixed, and a plat thereof is filed in the office of the commissioner of the general land office, so that the limits of the grant become fixed when the line of route is thus located. In this case such line was established by a map of definite location filed in May, 1884, nearly 20 years after the granting act was passed. It is undisputed that the right of way, as thus ascertained, was vested in the company as of the date of the act of congress, and it does not follow the line of construction where that deviates from the line of such location. Smith v. Railroad Co., 7 C. C. A. 397, 58 Fed. 513. It is conceded that the route must be considered as definitely fixed when its map of location is filed, upon the authority of decisions of the supreme court of the United States, where the question related to the limits of land grants, but it is sought to distinguish the question thus presented from that arising in this case. As to this, the circuit court of appeals for the Eighth circuit, in the case cited, says:

"But it is not perceived how the line of this railroad can be consistently held to be definitely and unalterably fixed, under the act of congress, by filing its map of definite location, and yet be subject to another and subsequent definite fixing, on a different line, by its actual construction; for this is simply to say that a line which is 'definitely fixed' is indefinitely changeable.

Nor is it perceived how this act of congress can be held to give the company the power to select and definitely fix one line of railroad for the purposes of its land grant, and another and a parallel line for the purposes of its right of way."

Every consideration upon which the land-grant companies are held to the lines of location designated in maps filed for that purpose by them, when the question was with reference to the grant of lands, applies equally in cases involving rights of way. The company makes its own selection of route, and it takes its own time in doing so. It is not concluded by any survey and selection it may make. As stated by the court in Land Co. v. Griffey, 143 U. S. 32, 12 Sup. Ct. 362:

"It may survey and stake many, and finally determine the line upon which it will build by a comparison of the cost and advantages of each; and only when, by filing its map, it has communicated to the government knowledge of its selected line, is it concluded by its action."

It is argued in this case that there is nothing in the act of congress that required the company to file a map of definite location; that the failure to do so simply had the effect to extend the time within which interests in lands within the limits of the grant might vest in others. This may be true, and, if so, it was open to the company not to signify its location of route by this method. It might have indicated its route by the construction of its road. But by whatever means it chose, if it had choice of methods, to signify its adoption of a line of route, when it had formally announced its selection the limits of its grant became fixed for all purposes. The case of Smith v. Railroad Co. also holds that the report of the railroad commissioners that the road was completed according to the requirements of the act of congress does not operate as a judicial determination of the company's title to the right of way occupied by it. It clearly was not a function of the commission to determine anything but the practical question whether the road was well and serviceably built. But, if the right of way is not subject to change, it does not follow that the company may not abandon the right of way, so long as private rights are not affected, and purchase another, by the method of condemnation or otherwise. There is no reason why it may not surrender the right conferred upon it if it sees fit to do so,—why it should be less free to change its route than it would be if the government had not favored it in this respect. It is well settled that a railroad company seeking to condemn a right of way may, after the assessment of damages, change the location of its road. 1 Rorer, R. R. 326; State v. Graves, 19 Md. 351. And it may do this without the payment of the damages assessed, so long as it has not taken possession of the right condemned.

Defendant in error asks especial consideration for the case of Moorhead v. Railroad Co., 17 Ohio, 349. That case involved the question whether a railroad company, under a charter which authorized it "to vary the route and change the location after the first selection had been made, whenever a better and cheaper route could be had, or whenever any obstacle to continue said location was found," etc., could relocate its road on distinct ground after having

once located and constructed it. The court held that the power to change the road was not intended to be a continuing power, that "might be exercised and re-exercised again and again, as often as might suit the convenience of the company"; that "the completion of the road upon the route first located exhausted all the power of the company"; that the right to change must be exercised before the road is built. The statute having provided in what cases a located line might be changed, the conclusion was unavoidable that changes not within the statute were unauthorized. The right to change the line once located was not involved; the sole question being whether, under the statute, the road when once built, could be changed. The railroad company, therefore, having the power of eminent domain when it entered upon the land in question and built its road, its liability to make compensation for the taking is to the grantor of the defendant in error,—to the owner whose land was taken. The question is decided by the supreme court of the United States in Roberts v. Railroad Co., 158 U. S. 10, 15 Sup. Ct. 758. The court says:

"It is well settled that where a railroad company, having the power of eminent domain, has entered into actual possession of land necessary for its corporate purposes, whether with or without the consent of the owner of such lands, a subsequent vendee of the latter takes the land subject to the burthen of the railroad; and the right to payment from the railroad company, if it entered by virtue of an agreement to pay, or to damages, if the entry was unauthorized, belongs to the owner at the time the railroad company took possession."

The court refers to a number of cases where it is held that claims for damages in such cases were personal to the owner "when the injury occurred,—that they did not run with the land, nor pass by a deed, though not reserved," "unless expressly conveyed therein." Without deciding the further question as to the remedy available to the owner at the time of the entry and taking, the court goes on to say:

"So, too, it has been frequently held that if a landowner, knowing that a railroad company has entered upon his land and is engaged in constructing its road without having complied with the statute, requiring either payment by agreement or proceedings to condemn, remains inactive, and permits them to go on and expend large sums in the work, he will be estopped from maintaining either trespass or ejectment for the entry, and will be regarded as having acquiesced therein, and be restricted to a suit for damages.".

It appears from the complaint, and from the stipulation of facts in the case, that the railroad company entered upon the land in question and built its road in March, 1886, "wrongfully and without the consent" of the then owner; that the road has since been maintained and operated; and that in May, 1888, the plaintiff, presumably with knowledge of the occupation and use by the railroad, purchased the land, and became, and has since been, the owner in fee. This cause of action existed in favor of plaintiff's grantor more than two years before plaintiff made his purchase. It is not claimed that this right was assigned to plaintiff, unless the conveyance of the fee of the land had that effect; but, as we have seen, the conveyance did not have that effect.

When the trial of this case in the court below was begun, the complaint of the defendant in error was to recover the possession

of the land which is the subject of controversy, and for damages. During the trial, upon a motion for nonsuit by the defendant company, the court announced that the action could not be maintained in the form in which it then was, and that, unless an application for leave to amend was made and allowed, the motion for nonsuit would be granted. Thereupon the defendant in error made application for leave to file his second amended complaint, which motion was allowed, and the complaint in its present form was filed. The defendant in error excepted to the ruling of the court to the effect that ejectment would not lie, and he now requests a review of this ruling, in the event of a reversal by this court of the judgment in his favor; and to this end he relies upon a stipulation by which "it is stipulated and agreed that plaintiff's exceptions upon the trial to the rulings of the court, as shown by the transcript upon defendant's writ of error, may be considered upon the hearing in the circuit court of appeals with the same force and effect as if a writ of error had been allowed upon plaintiff's part, and duly certified by the court upon the trial." The decision already announced is decisive of the question. Moreover, the objection was waived by the defendant in error, by his election to amend his complaint and proceed as he has done. It was open to him to have stood upon his right to proceed in ejectment, or to adopt the course he has taken. He was at liberty to take one of two roads, but not both; nor can he at the same time accept and reject the judgment under review. It follows that the judgment of the court below should be reversed, and the case remanded for further proceedings in accordance with this opinion.