EASTERN OREGON LAND CO. v. DES CHUTES R. CO.

(District Court, D. Oregon. May 18, 1914.)

No. 3624.

1. EMINENT DOMAIN (§ 280*)—REMEDY OF OWNER—CONSENT TO IMPROVEMENT.

Where a purchaser, who elected to exercise an option to purchase real estate, knew that a railroad company was in possession, constructing its road at a large expense pursuant to an agreement or supposed agreement with the interested parties, including the purchaser, he could not be heard to say that the road was located and constructed without his consent.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 776; Dec. Dig. § 280.*]

2. EMINENT DOMAIN (§ 266*)—REMEDY OF OWNERS—CONSTRUCTION OF RAILROAD.

Where a railroad company entered into possession and built its road by the consent or acquiescence of the owner and the holder of an outstanding option to purchase, the remedy, if any, against the company was at law for damages.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 694–696, 702, 703, 705; Dec. Dig. § 266.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

213 F.—57

3. EMINENT DOMAIN (§ 284*)—REMEDY OF OWNERS—DAMAGES—PARTIES ENTI-
TLED TO 'RECOVER.

    Where a railroad company was in possession and engaged in the actual
construction of its road at the time a purchaser acquired title to the
premises, the right to proceed against the company for the agreed price
of the right of way or for damages for an unauthorized entry by the
company or for the location of the road, in violation of an agreement with
the owner, did not pass to the purchaser.

    [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 789,
790; Dec. Dig. § 284.*]

    In Equity. Suit by the Eastern Oregon Land Company against the
Des Chutes Railroad Company. Complaint dismissed.

    A. L. Veazie and Wirt Minor, both of Portland, Or., for complain-
ant.

    James G. Wilson and A. C. Spencer, both of Portland, Or., for de-
fendant.

    BEAN, District Judge. This is a suit to enjoin and restrain the
defendant company from constructing and maintaining its railroad
along the Des Chutes river and across certain premises owned by com-
plainant. At the time the suit was commenced, the defendant com-
pany was engaged in the construction of its road and had its grade
practically completed over the premises referred to. The road was
located and the work thereon commenced while the land in question,
except two small tracts, belonged to or was claimed by the heirs of J.
H. Sherar, and the two tracts referred to by the Interior Development
Company.

    The Des Chutes river flows through the property in a deep gorge
or canyon and, by reason of falls therein, the quantity of water, the
uniformity of flow, and the steep and precipitous banks, is valuable
for power purposes. The defendant's road is on the side of the can-
yon about 65 feet above low water at the proposed power site. The
land actually occupied by it is not shown by the evidence to be of any
substantial value, but the position of complainant in effect is that
defendant entered into possession under oral agreements or under-
standings with its predecessors in interest to locate its road so as to
permit the maintenance of a 60-foot dam in the river, but, as the road
is actually built, 55 feet is the maximum height to which a dam can
safely be constructed, and as a consequence the value of the water
power is greatly impaired, to complainant's damage in a large sum.

    The facts are that in 1908 defendant surveyed and located a line
of railway across the property following substantially a water grade.
In February, 1909, as a result of a conference between the holder of
an option to purchase given by Sherar in his lifetime, and the officers
of the defendant, the line was changed by elevating it for the purpose
of protecting the water power. The witnesses are not in accord as to
the terms of the agreement, but it is alleged in the amended complaint
that it was agreed that the defendant might enter upon the lands in
question and "locate and construct its railway over the same, provided
that the railway should be so located, constructed, and maintained

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

over said lands and over the lands above and below said lands that a dam 60 feet in height above ordinary low water in the Des Chutes river might be constructed" at any place on the lands in the option described. There was no discussion at the time between the holders of the option and the officers of the defendant as to the consideration to be paid for the right of way, but it seems to have been assumed that the road would be of no damage to the premises, provided it did not interfere with the development of the water power.

In pursuance of the agreement referred to, the defendant relocated its line in March and April, 1909, at the place where the road was subsequently constructed. It thereafter obtained the consent of the Interior Development Company to enter upon the lands belonging to it and to construct its road according to the relocation survey.

Thereafter, and during the summer and fall of 1909, the complainant began negotiations with the holder of the Hostetler option to acquire the right to purchase thereby conferred, and such negotiations resulted in the assignment of the option to it about August 5th of that year. It thereupon employed an engineer to examine the project and report as to its value and availability. The engineer called upon the defendant company and obtained a profile of the resurveyed line through the property in question, and was advised of the probable elevation thereof above the water. On October 6, 1909, he reported to the complainant company that the levels run by him in connection with the profile indicated that the location of the line was only about 60 feet above the water surface, but he doubted if absolute assurance could be obtained without sending a man to the site to make careful measurements, and, in any event, he was reasonably certain the railroad company would object to raising its location.

On or about August 25, 1909, the defendant company obtained the consent of the heirs of Sherar to proceed with the construction of its road, provided it would build sufficiently high not to interfere with the use of the property for hydraulic purposes, and the holder of the outstanding option should consent, and, in case the option should not be taken up, it was to pay them $1,000 for the right of way.

About this time Mr. Morrow, the right of way agent of defendant, had an interview with Mr. Martin, president of complainant company, concerning the right of way over the Sherar property, and claims that he informed Martin of the agreement or understanding with the Sherar heirs, and that Martin consented thereto, and agreed that the defendant company might proceed with the construction of its road according to such understanding. Mr. Martin denies that any such agreement or understanding was had between him and Mr. Morrow. It is manifest, however, that Mr. Morrow so believed, and the complainant knew that he and his company were acting on such belief and spending large sums of money in reliance thereon, for on the 27th of August, Morrow advised Mr. Huntington, attorney for the Sherar heirs, that the consent of the plaintiff company for the construction of its road had been obtained, and on the same date Huntington wrote to the agents of the complainant in Portland informing them that Morrow had stated that

he had seen Martin, who had expressed a willingness that defendant might go upon its land to construct the road, and suggesting that, if Martin had not given such consent, "Morrow's mind should be disabused of an apparent impression he has received from the conversation" he had with Martin. No effort was made by complainant to repudiate the alleged agreement nor to correct the belief under which defendant was acting, but it was permitted to proceed with the work without protest.

The line of the road as relocated pursuant to the agreement or understanding with the holders of the Hostetler option, the Sherar heirs, and the Interior Development Company, and the understanding or supposed understanding with the complainant, was formally adopted by defendant in the fall of 1909, and the actual work of construction commenced in September of that year, and was prosecuted from that time with diligence without objection from any one until the grade was substantially completed in the following spring.

About December 1, 1909, and after defendant had thus entered into possession of the property, and while it was engaged in the construction of its road, complainant acquired the stock of the Interior Development Company and elected to exercise the right to purchase the Sherar property under the Hostetler option. The deeds from the Sherar heirs to it were deposited in escrow to be delivered upon the payment of the purchase price, but the consideration moving to them was not paid nor the deeds delivered until about April 1, 1910. At that time the grade of the road was practically completed. The deed from the Interior Development Company for the land at the power site was not made to complainant until April 4th of the present year.

[1] It thus appears that, notwithstanding complainant had knowledge of defendant's possession, the claims under which it was proceeding, the actual location of its line, and the work being done thereon, it allowed the work to proceed without objection until after defendant had expended large sums of money relying on its agreement or supposed agreement with the interested parties including the complainant.

I am therefore inclined to the opinion that, under such circumstances, the complainant cannot be heard to say that the road was located and constructed at the place where it was actually built without its consent.

[2] But however that may be, the defendant having entered into possession and built its road by the consent or acquiescence of the owners of the property and the holders of the outstanding option, it cannot now be ejected, but the remedy, if any, is restricted to a suit for damages. N. P. Ry. v. Smith, 171 U. S. 260, 18 Sup. Ct. 794, 43 L. Ed. 157; City of N. Y. v. Pine, 185 U. S. 93, 22 Sup. Ct. 592, 46 L. Ed. 820.

[3] And, as it was in possession and engaged in the actual construction at the time complainant purchased and acquired title, the right to proceed against it for the agreed price of the right of way, if there was such an agreement, or for damages if the entry is to be deemed unauthorized, or the road located in violation of the agreement with

the owners, did not pass to complainant, for, as said by the Supreme Court in Roberts v. N. P. R. R., 158 U. S. 1, 15 Sup. Ct. 756, 39 L. Ed. 873:

"It is well settled that where a railroad company, having the power of eminent domain, has entered into actual possession of land necessary for its corporate purposes, whether with or without the consent of the owner of such lands, a subsequent vendee of the latter takes the land subject to the burthen of the railroad, and the right to payment from the railroad company, if it entered by virtue of an agreement to pay, or to damages, if the entry was unauthorized, belongs to the owner at the time the railroad company took possession."

See, also, Kindred v. U. P. R. R., 225 U. S. 582, 32 Sup. Ct. 780, 56 L. Ed. 1216; Stone v. City of Waukeegan, 205 Fed. 495, 123 C. C. A. 563; 15 Cyc. 795; Maffet v. Quine (C. C.) 93 Fed. 347; N. P. R. R. v. Murray, 87 Fed. 648, 31 C. C. A. 183.

A contrary doctrine seems to have been announced by the Supreme Court of North Carolina in Phillips v. Telegraph Co., 130 N. C. 526, 41 S. E. 1022, 89 Am. St. Rep. 868, and Beal v. Railroad Co., 136 N. C. 298, 48 S. E. 674, and perhaps by some other courts, but these decisions are not in harmony with the rule laid down by the Supreme Court, which is, of course, controlling here.

It follows, therefore, that the complaint should be dismissed; and it is so ordered.