SMITH, RESPONDENT, *v.* NORTHERN PACIFIC RY. CO.,
APPELLANT.

(No. 4,067.)

(Submitted December 12, 1919.   Decided December 29, 1919.)

[186 Pac. 684.]

*Railroads—Right of Way—Eminent Domain—Damages—In-
dians—Citizenship—Real Property—Vendor and Purchaser—
Damages—Who may Claim.*

Indians—Allotments of Land in Severalty—Citizenship—Rights Ac-
quired.
1.  *Held,* that an Indian who had severed his tribal relations and ac-
quired an allotment of land under the Act of Congress of June 5, 1872
(17 Stats. at Large, p. 226), became a citizen of the United States
upon approval of the Act of February 8, 1887 (24 Stats. at Large,
p. 390), and entitled to institute or defend actions of ejectment or
trespass in state or federal courts, regardless of the prohibition
against the alienation of the land obtained under the allotment.

Railroads—Eminent Domain—Vendor and Purchaser—Who Entitled to
Damages.
2.  Where land is taken by a railroad company under its power of
eminent domain, the right to compensation for damages accrues to
the owner at once, and does not pass to a subsequent purchaser by
the mere conveyance of the land.

    [As to the right of a purchaser of land on which a railroad right
of way has been constructed to recover compensation therefor, see
note in Ann. Cas. 1912A, 1056.]

*Appeal from District Court, Ravalli County; R. Lee McCul-
loch, Judge.*

ACTION by Rolla B. Smith against the Northern Pacific Rail-
way Company.   Plaintiff had judgment.   Defendant appeals.
Reversed, with directions to dismiss the action.

*Messrs. Gunn, Rasch & Hall,* for Appellant, submitted a brief;
*Mr. E. M. Hall* argued the cause orally.

Where an entryman relinquishes his entry before perfecting
patent but after a railroad company had complied with the stat-
ute of March 3, 1875, and on the date of such relinquishment
or thereafter another person made homestead entry on the same

land, the railroad's right of way over the land is superior to the rights of the new homestead entryman, there being no privity of estate between the original entryman and the second entryman, the latter's right dating only from the time of his application to enter the land. (*Hamilton* v. *Spokane R. Co.,* 3 Idaho, 164, 28 Pac. 408; *Jamestown etc. R. Co.* v. *Jones,* 7 N. D. 619, 76 N. W. 227; *Alexander* v. *Kansas City etc. R. Co.,* 138 Mo. 464, 40 S. W. 104; *Bonner* v. *Rio Grande Southern R. R. Co.,* 31 Colo. 446, 72 Pac. 1065; *Pierce* v. *Chicago, M. & S. P. Ry.,* 52 Mont. 110, 156 Pac. 127.)  So in the case at bar, the plaintiff's right to the land takes effect only from the date of his application to purchase on December 4, 1909, and is subject to the right of way across said land acquired by the railroad and used continuously since 1887.

Plaintiff has no right of action.  The first defense sets out a complete and sufficient defense as against a demurrer thereto, for the reason that if the allegations therein contained are true, they show a vested title in the defendant and his predecessors in interest to the right of way 200 feet wide across this land, and an open and continuous use and operation thereof since 1887, while the complaint shows that plaintiff did not make application to purchase until 1909.  Under such circumstances he cannot maintain an action for damages to such land by reason of such right of way.  The right of action, if any, for such damages, belongs exclusively to the owner of the land at the time the company took possession thereof for a right of way. (*Roberts* v. *Northern Pac. R. R. Co.,* 158 U. S. 1, 39 L. Ed. 873, 15 Sup. Ct. Rep. 756; *Northern Pacific R. Co.* v. *Murray,* 87 Fed. 648, 31 C. C. A. 183; *Green* v. *South Bound R. Co.,* 112 Ga. 849, 38 S. E. 81; *Kakeldy* v. *Columbia & P. S. R. Co.,* 37 Wash. 675, 80 Pac. 205; *Maffet* v. *Quine,* 93 Fed. 347.)

Defendant pleads the defenses of title by adverse possession under claim of title based on color of title and various statutes of limitation as a bar to plaintiff's action.  There is no question but what the grant of rights of way by the Act of Congress of March 3, 1875, when complied with by a railroad, and its

map of definite location filed and approved by the secretary of
interior and the right of way actually possessed and used, gives
the railroad an occupancy and possession under a claim of title
based on color of title. "Color of title" and "claim of title"
are defined and the above statutes construed by our supreme
court in the recent case of *Morrison* v. *Linn,* 50 Mont. 396, 147
Pac. 166, 167. (See, also, 1 Cyc. 1082–1084; 2 C. J., secs. 323–
325; 15 L. R. A. (n. s.) 1215, and exhaustive note; 1 R. C. L.
706, 707.)

A patent to land, previously patented to another, although
void and passing no title, constitutes color of title. (*Payne* v.
*Markle,* 89 Ill. 66; *Middlesboro W. W. Co.* v. *Neal,* 105 Ky. 586,
49 S. W. 428; *East Tennessee Iron etc. Co.* v. *Wiggin,* 68 Fed.
446, 15 C. C. A. 510; *Weaver* v. *Love,* 146 N. C. 414, 59 S. E.
1041; *Williamson* v. *Brown,* 49 Tex. Civ. App. 402, 109 S. W.
412; *Bryant* v. *Strunk,* 151 Ky. 97, 151 S. W. 381; *Southern
Ry. Co.* v. *Cleveland,* 169 Ala. 22, 53 South. 767.) "Good
faith" is not essential to color of title. (1 Cyc. 1101; 1 R. C. L.
709; 15 L. R. A. (n. s.), and cases cited on p. 1248 of note.)

Where one occupies land under "color of title" for the re-
quired period to obtain title by prescription, he acquires title
not only to the land actually occupied and used, but also to
the entire tract as described in his muniment. (Sec. 6436,
Rev. Codes; *Morrison* v. *Lynn, supra; Ainsa* v. *New Mexico &
A. R. Co.,* 13 Ariz. 320, 114 Pac. 971; *Northern Pacific R. Co.*
v. *Smith,* 171 U. S. 260, 43 L. Ed. 157, 18 Sup. Ct. Rep. 794;
*Hargis* v. *Kansas City etc. Ry. Co.,* 100 Mo. 210, 13 S. W. 680;
*Seaboard Air Line R.* v. *Olive,* 142 N. C. 257, 55 S. E. 263.)

By virtue of said Act of 1887, Indians who have severed their
tribal relations and taken allotments are citizens, and entitled
to institute or defend actions in state or federal courts; and that
they can maintain actions in ejectment or for trespass on the
land selected by them. (*Wa-La-Note-Tke-Tynin* v. *Carter,* 6
Idaho, 85, 53 Pac. 106; *Carter* v. *Wann,* 6 Idaho, 556, 57 Pac.
314; *Brown* v. *Anderson* (Okl.), 160 Pac. 724; *Bird* v. *Terry,*
129 Fed. 472; *Sorrels* v. *Jones,* 26 Okl. 569, 110 Pac. 743; *Smith*

v. *Mosgrove,* 51 Or. 495, 94 Pac. 970; *State* v. *Norris,* 37 Neb. 299, 55 N. W. 1086; *State* v. *Denoyer,* 6 N. D. 586, 72 N. W. 1014.)

Plaintiff was estopped to maintain the action. (*Roberts* v. *Northern Pacific R. Co.,* 158 U. S. 1, 39 L. Ed. 873, 15 Sup. Ct. Rep. 756; *Northern Pacific R. Co.* v. *Smith,* 171 U. S. 260, 43 L. Ed. 157, 18 Sup. Ct. Rep. 794; *Kakeldy* v. *Columbia & P. S. R. Co.,* 37 Wash. 675, 80 Pac. 205; *Little Bill* v. *Swanson,* 64 Wash. 650, 117 Pac. 481; *Donohoe* v. *El Paso & S. W. R. Co.,* 11 Ariz. 293, 94 Pac. 1091; *Penrhyn Slate Co.* v. *Granville Electric L. & P. Co.,* 181 N. Y. 80, 2 Ann. Cas. 782, 73 N. E. 566.)

*Mr. George T. Baggs,* for Respondent, submitted a brief.

The pleadings of the defendant and its brief in support of its contention are based, it seems, upon a false premise, namely, that the land in question was part of the public domain of the United States. This presumption, we contend, is erroneous, and, being incorrect, appellant's argument and cases cited in support thereof have no application to the case at bar.

From the time the lands in the Bitter Root Valley were withdrawn from settlement by President Grant by proclamation prior to the Act of June 5, 1872, for the purpose of determining whether the Bitter Root Valley would make a better reservation for the Flathead Indians than the Jocko, said lands were held to be in a state of reservation and not part of the public domain of the United States. This question was definitely settled long ago when it was held by the Land Department that the land grant of the Northern Pacific Railroad Company did not extend to the Bitter Root Valley as defined by the secretary of the interior, being the fifteen townships originally surveyed under the Act of June 5, 1872, because said lands were in a state of reservation, and this contention has been uniformly upheld by the courts of the country.

It is a well-settled rule that when a treaty or statute prescribes a particular mode of conveyance, one independent of that mode is forbidden by implication and is void. (22 Cyc.

136, and cases there cited.) The only mode prescribed by law for a long time for acquiring title to the Bitter Root Valley lands was by the Act of June 5, 1872, and the only Act under which title could be acquired to said lands especially allotted to the Indians is the Act of March 2, 1889. The Indian could not alienate nor could his trustee for the United States government until such time as an Act was passed for that purpose.

The lands of the Bitter Root Valley seem to be in a class by themselves. There was no law under which title to said lands could be acquired after the Act of June 5, 1872, except under the provisions of that Act. It was held that neither the Homestead Law nor the Timber and Stone Law was applicable to the lands in that valley until such time as a special Act of Congress was passed for the purpose of bringing the lands under the provisions of said Acts. It is true that no patents ever were delivered to the Indians to whom certain lands in the valley were allotted and to whom patents therefor were issued, but it is a matter of history that patents were issued though never delivered. There are no other Indian lands in the United States that were ever in exactly the same condition as the lands in the Bitter Root Valley. It will be remembered that General Garfield was sent to the valley for the purpose of negotiating a treaty with the Flathead Indians, so that they would give up their lands in the Bitter Root Valley and consent to be removed to the Jocko reservation; and it will also be remembered that it was always contended by Chief Charlos that he never signed said treaty and that the signature purporting to be his name which was attached to the treaty was a forgery, and it was by reason of the objections raised by him that these patents to the several allotments of the Indians in the Bitter Root Valley were not delivered and were not accepted by them.

The contention of the defendant that it went into possession under color of title is hardly borne out by the fact. Under Section 6436 of the Revised Codes, there can be no claim of color of title, for said section distinctly requires that in order to be color of title, at the time the person entered into the

possession of the property under claim of title he must found such claim upon a written instrument as being a conveyance of the property in question; and as the entry upon this land was about a year prior to the time they attempted to comply with the law of March 3, 1875, there was no written instrument at that time to give color of title to said claim. It is also held even though they had entered under color of title, that "A deed by an Indian in contravention of a treaty or grant withholding or restricting the power of alienation is not color of title and a vendee cannot acquire any right under such deed by adverse possession or estoppel." (22 Cyc. 136, and cases cited; *Morrison* v. *Linn,* 50 Mont. 396, 402, 147 Pac. 166.)

The cases cited in appellant's brief are not applicable to the case in question, for the reason that they do not have to do with or do not relate to land which was granted to the Indian without power of alienation. Suppose it to be true, as contended by the appellant, that the Indian could have brought suit for trespass during the time that he was still owner of the land. That in no wise affects this case or helps the appellant, for the reason that this is a continuing trespass, and though the Indian might have sued for damage incurred by the trespass during the time that he was entitled to possession, he could not by any such action surrender title to the land to the appellant. The plaintiff in this case has seen fit to waive the tort and sue in *assumpsit* for the value of the land taken, and has not asked any damages for the use and occupation of the land in controversy.

MR. JUSTICE HURLY delivered the opinion of the court.

This is an action to recover the value of twelve acres of land occupied by the appellant and its predecessors in interest as a right of way for a railroad across eighty acres of land, since the year 1887.

On July 5, 1873, one Trochee, a Flathead Indian, under the Act of Congress approved June 5, 1872, selected certain lands as his allotment in the Bitter Root Valley. Thereafter a

patent, containing restrictions against alienation of the land, was issued but never actually delivered to him. Later he consented to a sale thereof by the secretary of the interior, pursuant to the Act of Congress approved March 2, 1889. The respondent, under date of December 2, 1909, in accordance with the provisions of said Act of March 2, 1889, made application to purchase the tract of land on which is situated the right of way, and, having complied with the terms of purchase, patent was issued to him by the United States on March 23, 1913. On August 12, 1914, he commenced this action to recover the value of the land occupied by the defendant.

The defendant answered, admitting the foregoing, but denying that plaintiff was in the possession of the land occupied as right of way, and also denying the allegations of the complaint as to the value of the land so occupied. Six separate defenses were also set out in the answer: The first, alleging title in appellant to said right of way under the Act of Congress of March 3, 1875, granting to railroads the right of way through public lands of the United States; the second, alleging actual, open, peaceable, notorious, undisputed and exclusive adverse possession of the right of way, under claim of title; the third, fourth and fifth, alleging that plaintiff's cause of action is barred by the provisions of sections 6432, 6433 and 6436 of the Revised Codes; and the sixth, alleging that respondent is estopped and precluded from questioning the title of plaintiff to the right of way.

To this answer and to each separate defense a general demurrer was filed, which demurrer was sustained by the court as to each of said separate defenses. Thereafter a trial was had upon the issues raised by the pleadings and a verdict returned in favor of respondent, and judgment duly entered. After settlement of the bill of exceptions, appeal was taken direct from the judgment.

As we understand respondent's position, it is that Smith, by his purchase, succeeded to the rights of Trochee in the land, and that, while patent ran to Smith from the government, the

government acted merely as trustee or agent for Trochee, and that title did not again vest in the government as proprietor after the selection by Trochee; also, the use of the right of way constituted a continuing trespass, and that while Trochee might have sued for damages caused by the trespass during the time that he was entitled to possession, not having a fee-simple title and his right to alienate the land being prohibited, he could not thereby surrender title to the right of way to the railroad company, and the railroad company is liable to the present owner for the value of the land appropriated.

Section 3 of the Act of June 5, 1872, *supra,* provides: "That any of said Indians, being the head of a family, or twenty-one years of age, who shall at the passage of this Act, be actually residing upon and cultivating any portion of said lands, shall be permitted to remain in said valley and pre-empt without cost the land so occupied and cultivated, not exceeding in amount one hundred and sixty acres for each of such Indians, for which he shall receive a patent without power of alienation; Provided, that such Indian shall, prior to August first, eighteen hundred and seventy-two, notify the superintendent of Indian affairs for Montana Territory that he abandons his tribal relations with said tribe, and intends to remain in said valley: And Provided further, that said superintendent shall have given such Indian at least one month's notice prior to the date last above mentioned of the provisions of this Act and of his right so to remain as provided in this section of this Act." (17 U. S. Stats. at Large, p. 226.)

By an Act of Congress, approved March 2, 1889 (25 Stats. at Large, p. 871), it was provided "that the secretary of the interior, with the consent of the Indians severally to whom patents have been issued for lands assigned to them in the Bitter Root Valley in Montana," under the provisions of the Act of June 5, 1872, *supra,* "be, and he hereby is, authorized to cause to be appraised and sold all the lands allotted and patented to said Indians; * * * that the net proceeds from the sale of the lands herein authorized shall be placed in the Treasury to

the credit of the Indians severally entitled thereto," with authority vested in the secretary to pay the Indian patentees the purchase price received from the sale in such manner as he might deem for their best interests. Section 6 of the Act provides that in the event of the sale of such lands, the secretary of the interior shall remove the Indian whose lands may have been sold to the general reservation known as the Jocko reservation.

It is the contention of the appellant that, one of the require- [1] ments of said Act of Congress of June 5, 1872, being that the allottee must signify his intention to abandon his tribal relations before being entitled to the benefits of said Act, his selection having been approved, Trochee became a citizen of the United States upon the passage and approval of the Act of February 8, 1887 (24 Stats. at Large, p. 390), section VI of which is as follows: "And every Indian born within the territorial limits of the United States to whom allotments shall have been made under the provisions of this Act, or under any law or treaty, and every Indian born without the territorial limits of the United States, who has voluntarily taken up, within said limits, his residence separate and apart from any tribe of Indians therein, and has adopted the habits of civilized life, is hereby declared to be a citizen of the United States, and is entitled to all the rights, privileges and immunities of such citizens."

In the case of *Matter of Heff,* 197 U. S. 488, 49 L. Ed. 848, 25 Sup. Ct. Rep. 506, in an opinion by Mr. Justice Brewer, it was held that under said Act an Indian who has received an allotment and patent for land is no longer a ward of the government, but a citizen of the United States and of the state in which he resides, not within the reach of Indian regulations on the part of Congress, and that this emancipation from federal control cannot be set aside without the consent of the Indian or the state, nor is it affected by the provisions of the Act subjecting the land allotted to conditions against alienation, and guaranteeing him an interest in tribal property. In the

foregoing case the supreme court of the United States expressly approved the decisions of similar import rendered by the supreme courts of several of the states, as follows: *State* v. *Denoyer,* 6 N. D. 586, 72 N. W. 1014; *State* v. *Norris,* 37 Neb. 299, 55 N. W. 1086; *Wa-La-Note-Tke-Tynin* v. *Carter,* 6 Idaho, 85, 53 Pac. 106; *In re Now-Ge-Zhuck,* 69 Kan. 410, 76 Pac. 877; *United States* v. *Rickert,* 106 Fed. 1, 5; *Farrell* v. *United States,* 110 Fed. 942, 947, 49 C. C. A. 183; *Boyd* v. *State of Nebraska (Thayer),* 143 U. S. 135, 162, 36 L. Ed. 103, 12 Sup. Ct. Rep. 375.

That the Indians to whom allotments were made in the Bitter Root Valley were recognized as citizens by the secretary of the interior and the attorney general of the United States is plainly implied in the report of General Henry B. Carrington (approved by the secretary of the interior), agent of the Interior Department and special attorney for the government, acting in those capacities in obtaining the consent of the Indians to the sale of their lands by virtue of the Act of Congress of March 2, 1889, *supra.* (See Report of the Secretary of the Interior, Vol. 12, Senate Executive Doc., 1889–90; Doc. No. 221, 51st Congress, First Session.)

While it is true, as appears from General Carrington's report, that the patents to such Indians were never actually delivered to the allottees (and it is conceded that none was delivered to Trochee), Trochee took the necessary steps to, and did, acquire an allotment, thereby becoming a citizen of the United States.

The said Act of February 8, 1887, was amended on May 8, 1906 (24 Stats. at Large, 390, as amended by 31 Stats. at Large, 1447; 34 Stats. at Large, 182; 3 Fed. Stats. Ann., 2d ed., p. 830), so that citizenship does not follow allotment, but is dependent upon the issuance of the second or final patent, *etc.* While not important here, it has been held that this amendment was not retroactive. (See *State* v. *Lott,* 21 Idaho, 646, 123 Pac. 491.)

It has been repeatedly held that by virtue of the Act of February 8, 1887, *supra,* Indians who have severed their tribal relations and taken allotments are citizens and entitled to in-

stitute or defend actions of ejectment or trespass in state or federal courts, regardless of the prohibition against the alienation of the lands obtained under their allotment. (*Smith* v. *Mosgrove,* 51 Or. 495, 94 Pac. 970; *Wa-La-Note-Tke-Tynin* v. *Carter, supra; Carter* v. *Wann,* 6 Idaho, 556, 57 Pac. 314; *Bown* v. *Anderson* (Okl.), 160 Pac. 724; *Bird* v. *Terry,* 129 Fed. 472.)

With exceedingly few exceptions, and those often founded **[2]** upon peculiar situations, the rule is well established that where land is taken by a corporation authorized to exercise the right of eminent domain, the right to compensation for damages accrues to the owner at once and does not pass to a subsequent purchaser by the mere conveyance of the land. (See numerous cases cited in Decennial Digest, Eminent Domain, 153, 284.)

In *Roberts* v. *Northern Pac. R. R. Co.,* 158 U. S. 1, 39 L. Ed. 873, 15 Sup. Ct. Rep. 756, the court said: "So far as those portions of the lands described in the bill of complaint consist of parcels held and used by the railway company for the necessary and useful purposes of their road as a public highway, it is obvious that the title and possession thereof cannot be successfully assailed by the appellants. The latter became purchasers long after the railroad company had entered into visible and notorious possession of these portions of the lands, and had constructed the roads, wharves and other improvements called for by their contract with the county. It is well settled that where a railroad company, having the power of eminent domain, has entered into actual possession of land necessary for its corporate purposes, whether with or without the consent of the owner of such lands, a subsequent vendee of the latter takes the land subject to the burthen of the railroad, and the right to payment from the railroad company, if it entered by virtue of an agreement to pay, or to damages, if the entry was unauthorized, belongs to the owner at the time the railroad took possession." (See, also, *Northern Pac. Ry. Co.* v. *Murray,* 87 Fed. 648, 31 C. C. A. 183; *Green* v. *South Bound R. Co.,* 112

Ga. 849, 38 S. E. 81; *Kakeldy* v. *Columbia & P. S. R. Co.*, 37 Wash. 675, 80 Pac. 205; *Maffet* v. *Quine*, 93 Fed. 347.)

In *Kakeldy* v. *Columbia & P. S. R. Co.*, *supra*, the plaintiff purchased the land in suit after the construction of the road. Speaking of plaintiff's cause of action the court said: "The deeds under which he claims are in evidence. They contain no transfer to him of any right of action which his grantor may have had against the railroad company, if he had any such. An owner of land who stands by and without protest sees a railroad constructed thereon is estopped thereafter to maintain an action in ejectment or a suit for injunction to prevent the operation of the road. His remedy is limited to an action for damages for his compensation. * * * " (*Little Bill* v. *Swanson*, 64 Wash. 650, 117 Pac. 481; *Northern Pac. R. Co.* v. *Smith*, 171 U. S. 260, 43 L. Ed. 157, 18 Sup. Ct. Rep. 794; *Donohoe* v. *El Paso & S. W. R. Co.*, 11 Ariz. 293, 94 Pac. 1091; affirmed, 214 U. S. 499, 53 L. Ed. 1060, 29 Sup. Ct. Rep. 698; *Northern Pac. Ry. Co.* v. *Murray*, *supra*.)

In *Roberts* v. *Northern Pac. R. R. Co.*, *supra*, the court said: "The conclusion, therefore, seems warranted that, as to those portions of the lands in question which are occupied and used by the railroad company, the county (plaintiff's grantor) having stood by for years and permitted the company to proceed in the construction of its road and appurtenances at a vast expense, and having accepted large sums of taxes, would be estopped from interfering with the possession of the railroad company. *A fortiori*, it follows that Roberts, buying with notice, could not maintain either trespass or ejectment for such portions, nor would he, as such purchaser, be entitled to recover damages for the occupation thereof. The foregoing observations apply only to those portions of the lands in question which have been actually occupied and used by the railroad company for corporate purposes, or, in other words, to such lands as the railroad company could have condemned by the exercise of its right of eminent domain."

In this action no question is involved concerning ejectment or damages other than those arising from the actual appropriation of the land occupied as a right of way.

Plaintiff is seeking to recover the value of the land appropriated. This is a right which was possesssed only by Trochee, and there is no claim upon plaintiff's part that Trochee or the government assigned to him the right to recover such damages. His right is based solely upon the patent from the government, which, concededly, is silent as to the right of way. No assignment of his right to such damages having been made to the plaintiff, he should not recover herein.

The railroad company went into possession in 1887, and ever since has remained in open and notorious possession, having been in such possession approximately twenty-seven years at the time this action was commenced. So far as disclosed by the record (and the separate defenses must be taken as true upon this appeal, because standing upon the demurrers thereto), no claim or demand of any kind was made upon the railroad company, either by Trochee or the government, or the present plaintiff, prior to the issuance of the patent. Though, if Trochee or the government had seen fit, an action in trespass or ejectment could have been brought against the company at any time, unless barred by estoppel or limitation. That the plaintiff purchased with notice of defendant's occupancy there can be no question.

Conceding, though not deciding, that an action for damages in the nature of compensation could not have been maintained by Trochee because of the restrictions upon his right to convey, prior to the issuance of final patent, we fail to see how this could benefit plaintiff. He, not having been the owner at the time of the taking of the land, may not now maintain an action for such damages.

The plaintiff not being in position to recover upon his cause of action for the reasons stated, it is unnecessary to pass upon the other questions raised.

The judgment is reversed, with directions to the district court to dismiss the action.

*Reversed.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES HOLLO-WAY, MATTHEWS and COOPER concur.