Frank **POAFPYBITTY**, Carl Poafpybitty, Thompson Poafpybitty, Louise Poafpybitty and Laverne Aitson, Plaintiffs in Error,

v.

**SKELLY OIL COMPANY**, a corporation, Defendant in Error.

No. 40777.

Supreme Court of Oklahoma.

May 24, 1966.

Rehearing Denied Dec. 20, 1966.

Second Rehearing Denied Jan. 31, 1967.

Certiorari Granted Oct. 9, 1967.

See 88 S.Ct. 30.

See also Okl., 394 P.2d 515.

Charles Hill Johns and Houston Bus Hill, Oklahoma City, for plaintiffs in error.

S. W. Wells, Tulsa, and John H. Cantrell, Cantrell, Douglass, Thompson & Wilson, Oklahoma City, for defendant in error.

PER CURIAM:

This is a suit by the restricted Indian heirs of a member of the Comanche tribe of Indians to whom, as allottee, a tract of land in Stephens County was conveyed by a trust patent from the United States, in which the plaintiffs seek to recover from the defendant, Skelly Oil Company, lessee under a departmental oil and gas lease, royalties on gas which the plaintiffs allege the company permitted to escape and go to waste from the land. From a judgment of the District Court of Oklahoma County sustaining the demurrer of the defendant to the amended petition of the plaintiffs and dismissing the cause on their refusal to plead further, this appeal was prosecuted.

In the amended petition the plaintiffs alleged that they are the owners and in possession of a quarter section of land in Stephens County, said land being held in trust for them by the United States Government under the General Allotment Act of February 8, 1887, said lands being under the jurisdiction and control of the Secretary of the Interior acting by and through the Area Director of the Bureau of Indian Affairs and the Commissioner of Indian Affairs; that on May 28, 1947, the plaintiffs, as lessors, executed and delivered to the defendant, Skelly Oil Company, as lessee, a departmental oil and gas lease which was approved by the Acting Commissioner of Indian Affairs of the United States Department of the Interior, for a primary term of ten years, which

expired June 27, 1957, same to continue as much longer thereafter as oil and/or gas is produced in paying quantities from said land. A copy of the lease was attached to and made a part of the petition.

Plaintiffs further alleged that during the year 1956 the lessee drilled seven oil and gas wells on said land, all of which wells were completed as commercial producers; that shortly after the wells were completed demand was made by the plaintiffs on the lessee to market the gas being produced and flared from said wells, there being a gas line operated within a half mile from said land; that the defendant lessee failed and refused to exercise reasonable diligence in the prevention of waste of said gas as required by the lease, but, instead permitted the gas to escape and become wasted, contrary to the terms of the lease, causing the plaintiffs to lose their royalty from said escaping gas in the sum of $114,000.00, for which they prayed judgment.

Plaintiffs further alleged that they are the real parties in interest and that the United States is trustee for their benefit, and that the United States has consented to instituting this action by the plaintiffs and has authorized the plaintiffs to employ attorneys for the prosecution of the case.

The lease provides that the lessee shall pay to the Secretary of the Interior a royalty consisting of 12½% of the value or amount of all oil, gas, natural gasoline and all other hydrocarbon substances produced and saved from the leased land, save and except oil and/or gas used by the lessee for development and operation purposes on the leased premises, which shall be royalty free; that lessee shall furnish the Secretary of the Interior monthly statements showing the amount, quality and value of all such products produced and saved from the leased premises during the preceding calendar month; that the leased premises and wells, producing operations, improvements, machinery, and fixtures on said lease and connected therewith, and all books and accounts of the lessee shall be open at all times for the inspection of

any duly authorized representative of the Secretary of the Interior; that the lessee shall exercise reasonable diligence in drilling and operating wells for oil and gas purposes, and shall carry on all operations in a good and workmanlike manner in accordance with approved methods and practice having due regard for the prevention of waste of oil and gas developed on the land; shall carry out at its expense all reasonable orders and requirements of the oil and gas supervisor of the Department of the Interior relative to the prevention of waste and preservation of the property and the health and safety of workmen; that it shall abide by and conform to any and all regulations of the Secretary of the Interior now or hereafter in force relative to the lease; that the Secretary of the Interior may impose restrictions as to time or times for the drilling of wells and as to the production from any wells drilled when in his judgment such action may be necessary or proper for the protection of the natural resources of the leased land and the interests of the Indian lessor. The lease gives the Secretary of the Interior the right to declare the lease null and void, after notice and hearing, for violation of any of the terms and conditions of the lease *before restrictions are removed,* "provided that after restrictions are removed the lessor shall have and be entitled to any available remedy in law or equity for breach of this contract by the lessee."

The plaintiffs argue the case under two propositions:

1. That as beneficial owners of the land and lessors they have the right to maintain this action, notwithstanding the fact that as Indian Citizens they hold equitable title under a Trust Patent and the lease was required to be approved by the Commissioner of Indian Affairs, citing 42 C.J.S. Indians § 8, page 653; Smith v. Northern Pacific R. Co., 57 Mont. 14, 186 P. 684, 686; Sadler v. Public National Bank and Trust Co. of New York, 10 Cir., 172 F.2d 870; Bonnet v. Seekins, 126 Mont. 24, 243 P.2d 317; Brown v. Anderson, 61 Okl. 136,

160 P. 724; Choctaw and Chickasaw Nations v. Seitz, 10 Cir., 193 F.2d 456.

2. That as such beneficial owners, they have the right to maintain this action without joining the United States, which holds the land as trustee for them, citing Bush v. Missouri State Life Ins. Co., 86 Okl. 182, 207 P. 317; Smith v. Burt, 150 Okl. 34, 300 P. 748; Siniscal v. United States, 9 Cir., 208 F.2d 406.

The defendant argues the case under four propositions, but we believe its first proposition is decisive in its favor, which is that under the express terms of the lease and the regulations of the Secretary of the Interior made pursuant to law and which must be read into the lease, the plaintiffs are precluded from suing or recovering in this action.

The defendant calls attention to numerous rules and regulations promulgated by the Secretary of the Interior dealing with such departmental oil and gas leases, which have the force and effect of law, and of which the Federal and State courts take judicial notice. Diehl v. Phillips Petroleum Co., 376 P.2d 203 (Okl.); Seber v. Spring Oil Co., D.C., 33 F.Supp. 805. The regulations so prescribed among other things, define the duties of the supervisor, who is a representative of the Secretary of the Interior, under directions of the Director of the United States Geological Survey, in supervising and directing oil and gas operations. Among such regulations that are pertinent to the questions here involved are those appearing at 7 F.R. 1433–4135–4140 and Title 30, Code of Federal Regulations (CFR), January, 1966 Revision, in part, as follows:

(§ 221.3) "Drilling and producing operations, handling and gaging of oil and the measurement of gas or other products, determination of royalty liability, receipt and delivery to those entitled thereto of royalty accruing to the lessor and paid in the amount of production, determination of amount and manner of payment of damages assessed under authority of the regulations in this part for

defaults or noncompliance with duties by the lessee and, in general, all operations subject to the regulations in this part are under the jurisdiction of the supervisor for any district as delineated by the Director. As to producing leases of Indian lands, the officer in charge, and as to land within naval petroleum reserves, the supervisor shall determine rental liability, record rentals, royalties, and other payments, and maintain lease accounts. * * *"

(§ 221.4) "The supervisor is hereby authorized to require compliance with lease terms, with the regulations in this part, and all other applicable regulations, and with applicable law to the end that all operations shall conform to the best practice and shall be conducted in such manner as to protect the deposits of the leased lands and result in the maximum ultimate recovery of oil, gas, or other products with minimum waste. Inasmuch as conditions in one area may vary widely from conditions in another area, the regulations in this part are general, and detailed procedure hereunder in any particular area is subject to the judgment and discretion of the supervisor, and to any areal plan of development that may be adopted pursuant to law. * * *"

(§ 221.18) "The lessee shall comply with the terms of the lease, and of the regulations in this part and any amendments thereof, and with the written instructions of the supervisor, . . . * * *"

(§ 221.21) "The lessee shall drill diligently, and produce continuously from such wells as are necessary to protect the lessor from loss of royalty by reason of drainage, or, in lieu thereof, with the consent of the supervisor, he must pay a sum estimated to reimburse the lessor for such loss of royalty, the sum to be computed monthly by the supervisor. * *"

(§ 221.62) "When directed by the supervisor, a monthly report shall be made by the lessee in duplicate, on Form 9–

361 or 9–361A, showing each run of oil, all sales of gas, gasoline, other lease products, and the royalty accruing therefrom to the lessor. * * *"

(§ 221.63) "Form 9–614A, completely filled out and signed, shall be submitted to the supervisor in triplicate and shall accompany each remittance covering payments of royalty or rental on Indian lands."

(§ 221.60) "A separate report of operations for each lease must be made on Form 9–329 for public land and on Form 9–329A for Indian land, for each calendar month, beginning with the month in which drilling operations are initiated, and must be filed in duplicate with the supervisor on or before the 6th day of the succeeding month, unless an extension of time for the filing of such report is granted by the supervisor. * * *"

Tit. 25 CFR, sec. 172.23 provides in part:

"(A) A lease will be cancelled by the Secretary of the Interior for good cause upon application of the lessor or lessee, or if at any time the Secretary is satisfied that the provision of the lease or of any regulations heretofore or hereafter prescribed have been violated. * * *"

The regulations provide for appeals from orders made, under the regulations to the Director and from the Director to the Secretary, and procedure for such appeals is prescribed.

We do not find the authorities relied upon by the plaintiffs helpful in deciding their right to prosecute this action and recover judgment. None of those authorities deals with the rights and liabilities of the parties to a Departmental oil and gas lease giving the Secretary of the Interior and his subordinates wide authority over the development and operation of such leases as is the case under the terms of the lease and the regulations that apply to it, made pursuant to the law and the terms of the lease, which are herein quoted. Nor does the defendant cite any cases deal-

ing specifically with the rights of lessor under such a lease.

 The Secretary of the Interior is in effect made guardian of the restricted Indian lessors in dealing with the lessee in the development and operation of the lease and the lessors are given no express authority to deal with the lessee in its development and operation. The lessee is required to comply with the written directions of the Supervisor in carrying out the terms of the lease and applicable regulations, and the Secretary of the Interior may cancel the lease on application of the lessors for failure of the lessee to comply with the provisions of the lease or regulations, and there is no allegation in the petition that the defendant has failed to comply with any directions given it by the Supervisor. The exclusive authority of the Secretary of the Interior and his subordinate officers shall continue so long as the restrictions on the Indian lessors are in effect. In paragraph 6 of the lease, it is provided "that after the restrictions are removed the lessor shall have and be entitled to any available remedy in law or equity for breach of this contract by the lessee." We think, under the maxim *"expressio unius est exclusio alterius"*, this provision deprives the lessors of the right to prosecute a suit for breach of the lease contract until the restrictions are removed, and there is no allegation in the petition that the restrictions have been removed.

■ The lessee is entitled to rely upon the directions of the Secretary of the Interior and his subordinate officers, made under the terms of the lease and such rules and regulations, in developing and operating the lease, and in the absence of a violation of any such direction it is not liable in a suit for damages. The fact that the United States authorized the plaintiffs to employ counsel and consented to the filing of the suit, as alleged in plaintiffs' petition, did not create a cause of action in favor of the plaintiffs contrary to the terms of the lease and the rules and regulations

promulgated by the Secretary of the Interior.

The trial court properly sustained the demurrer to the amended petition.

Judgment affirmed.

JACKSON, V. C. J., and DAVISON, WILLIAMS, IRWIN, BERRY, HODGES and LAVENDER, JJ., concur.

The Court acknowledges the services of Thurman S. Hurst, who with the aid and counsel of George S. Downey and David L. Fist, as Special Masters, prepared a preliminary advisory opinion. These attorneys had been recommended by the Oklahoma Bar Association and appointed by the Court. The Chief Justice then assigned the case to BLACKBIRD, J., for review and study, after which and upon consideration by the Court, the foregoing opinion was adopted.