## UTAH & NORTHERN RAILWAY *v.* FISHER.

APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF IDAHO.

Submitted October 21, 1885.—Decided December 14, 1885.

The Fort Hill Indian reservation in the County of Oneida, in the Territory of Idaho, is not excluded from the limits of the Territory by the act of March 3, 1863, creating it ; and the treaty of July 3, 1868, with the eastern band of Shoshonees and the Bannack tribe does not necessarily except it from the jurisdiction of the Territory.

The lands and railroad of the Utah & Northern Railway Company situated within the limits of the Fort Hill Indian Reservation are subject to territorial taxation, which may be enforced within the exterior boundaries of the reservation by proper process.

The facts which make the case are stated in the opinion of the court.

*Mr. John F. Dillon* and *Mr. A. J. Poppleton* for plaintiff in error submitted on their brief.

No appearance for defendant in error.

MR. JUSTICE FIELD delivered the opinion of the court.

The plaintiff became a corporation of Utah under an act of the Territory of February 12, 1869, for the incorporation of railroad companies ; and by the act of Congress of June 20, 1878, it was made a railway corporation, not only of that Territory, but of Idaho and Montana also, with the same rights and privileges it had under its original articles of incorpora-

tion, with a proviso, however, that it should thereafter be subject to all laws and regulations in relation to railroads of the United States, or of any Territory or State through which it might pass.   20 Stat. ch. 242, § 2.   It now owns and operates in Idaho a railroad, which, for the distance of sixty-nine miles and a fraction of a mile, passes through a tract of land in the county of Oneida, known as the Fort Hill Indian Reservation, which was, on the 30th of July, 1869, set apart by order of the President for the Bannack tribe of Indians, pursuant to the provisions of a treaty between the United States and the Eastern Band of Shoshonees and the Bannack tribe, concluded July 3, 1868.   15 Stat. 673.

In 1882 there was levied under the laws of the Territory upon the railroad, its depots, and other property within the reservation, for territorial and county purposes, a tax, amounting in the aggregate to $4478.   The defendant is the assessor and tax-collector of the county, and the tax having become delinquent, he was proceeding to enforce it by a sale of the property, when the plaintiff commenced this suit in the District Court of the county to restrain him, contending that the property, being within the boundaries of the Indian reservation, is withdrawn from the jurisdiction of the Territory.   A preliminary injunction was granted, but at the hearing the court held that the property was subject to taxation, and that the tax was duly levied.   The injunction was accordingly dissolved and judgment rendered for the defendant.   On appeal to the Supreme Court of the Territory this judgment was affirmed.

The contention of the plaintiff is that the Indian reservation is excluded from the limits of Idaho by the act of March 3, 1863, creating the Territory, 12 Stat. 808 ; or, that it is necessarily excepted from the jurisdiction of the Territory by the treaty of July 3, 1868.   Neither position can be sustained. The first section of that act embraces within the boundaries of the Territory the reservation ; and the proviso upon which the plaintiff relies only declares that nothing shall be construed to impair the existing rights of the Indians in Idaho, so long as they shall remain unextinguished by treaty, or to include within its boundaries or jurisdiction any lands which, by treaty

with the Indian tribes, were not, without their consent, to be included within the limits or jurisdiction of any State or Territory ; or to affect the authority of the government of the United States to make any regulations respecting the Indians, their lands, property, or other rights, by treaty, law, or otherwise, which it would have been competent for the government to make if the act had not passed. 12 Stat. 808. The proviso excludes from the limits and jurisdiction of Idaho only such lands as by treaty were not to be included without the consent of the Indians, and it recognizes the authority of the United States to make the same regulations respecting the lands, property, and other rights of the Indians, which it would have been competent to make before the passage of the act. There was at that time no treaty with the Indians that the lands, which might be reserved to them, should be thus excluded from the limits and jurisdiction of any State or Territory. The clause of the proviso on that head has therefore no application. *Harkness* v. *Hyde*, 98 U. S. 476, in which it was held that the jurisdiction of the Territory did not extend over the reservation, was decided upon the mistaken belief that such a treaty existed, and that to it the proviso referred. This error was corrected in *Langford* v. *Monteith*, 102 U. S. 145, 147. As no such treaty existed, the proviso did not exclude the reservation from the limits or the jurisdiction of the Territory.

By the treaty it was agreed that whenever the Bannacks desired a reservation to be set apart for their use, or the President deemed it advisable to put them upon a reservation, he should cause a suitable one to be selected in their country. It was under this agreement that the Fort Hill Reservation was subsequently established and the Bannacks placed upon it. The treaty provided a reservation for the Shoshonees, and declared that they should enjoy various rights and privileges, and that the Bannacks, when their reservation was made, should have the same rights and privileges therein. Among other things, it was stipulated that the reservations should be set apart for their absolute and undisturbed use and occupation, and for such other friendly tribes or individual Indians to whose admission from time to time they and the United States

might consent; and that no person should ever be permitted by the United States to pass through, settle upon, or reside on the reservation, except those designated in the treaty, and such officers, agents, and employees of the government as might be authorized to enter therein in the discharge of duties enjoined by law. The treaty also provided for the punishment, according to the laws of the United States, of any person among the Indians who should commit a wrong or depredation upon the person or property of any one, white, black, or Indian, subject to the authority of the United States, and at peace therewith; and that no treaty for the cession of any portion of the reservation held in common should be of any force or validity as against the Indians, unless executed and signed by a majority of the adult male Indians occupying or interested therein; and that no cession should be construed to deprive, without his consent, any member of the tribe of his right to land selected by him under the treaty.

It is contended by the plaintiff that these stipulations cannot be carried out, if the laws of the Territory are enforced on the reservation; and in support of the position special emphasis is placed upon the clause in regard to persons passing over, setling upon, or residing in the Territory, and the clause touching wrong-doers among the Indians. As these treaty provisions have the force and effect of a law, it is insisted that the reservation is excluded from the general jurisdiction of the Territory, as effectually as if the exclusion was made in specific terms.

To uphold that jurisdiction in all cases and to the fullest extent would undoubtedly interfere with the enforcement of the treaty stipulations, and might thus defeat provisions designed for the security of the Indians. But it is not necessary to insist upon such general jurisdiction for the Indians to enjoy the full benefit of the stipulations for their protection. The authority of the Territory may rightfully extend to all matters not interfering with that protection. It has, therefore, been held that process of its courts may run into an Indian reservation of this kind, where the subject-matter or controversy is otherwise within their cognizance. If the plaintiff lawfully constructed and now operates a railroad through the reservation, it is not

perceived that any just rights of the Indians under the treaty can be impaired by taxing the road and property used in operating it. The authority to construct and operate the road appears from the agreement of July 18, 1881, between the United States and the Indians, which was ratified by act of Congress of July 3, 1882. That agreement recites that the Utah and Northern Railway Company had applied for permission to construct a line of railway through the reservation, and that the Indians had agreed, for the consideration thereafter mentioned, to surrender to the United States their title to so much of the reservation as might be necessary for the legitimate and practical uses of the road. A strip of land and several parcels adjoining it, forming part of the reservation, were ceded to the United States for the consideration of $6000, to be used by the company and its successors or assigns as a right of way and road-bed, and for depots, stations, and other structures. By an act of Congress confirmatory of the agreement the same right of way was relinquished by the United States to the company for the construction of its road; and the use of the several parcels of land intended for depots, stations, and other structures was granted to the company and its successors or assigns, upon the payment to the United States of the $6000; and on the condition of paying any damages which the United States or Indians, individuals or in their tribal capacity, might sustain, by reason of the acts of the company, or its agents or employees, or on account of fires originating in the construction or operation of the road. By force of the cession thus made, the land upon which the railroad and other property of the plaintiff are situated was, so far as necessary for the construction and working of the road, and the construction and use of buildings connected therewith, withdrawn from the reservation. The road and property thereupon became subject to the laws of the Territory relating to railroads, as if the reservation had never existed. The very terms on which the plaintiff became a corporation in the Territory rendered it subject to all such laws, and, of course, to those by which the tax in controversy was imposed.

The only answer of the plaintiff to this view is, that, by the

stipulation of the parties and the finding of the court thereon, it appears that the railway and property which are taxed, are situated within the boundaries of and *upon the reservation.* If this be so, it does not follow that the result would be changed. The moment that the road was lawfully constructed it came under the operation of the laws of the Territory. The stipulation and finding must, however, be read with reference to the legislation of Congress, and, therefore, as only establishing that the road and property are within the exterior boundaries of the reservation. They will not be so construed as to allow the company to escape taxation by the force of a stipulation as to an alleged fact which that legislation shows does not exist.

*Judgment affirmed.*