## No. 18,964.

### Clifford Becher Whyte v. District Court of Montezuma, et al.
(346 P. [2d] 1012)

Decided September 21, 1959.   Rehearing denied December 14, 1959.

Mr. Warren O. Martin, Mr. Fred M. Winner, Mr. Max D. Melville, Messrs. Milenski & Parga, for petitioner.

Mr. Duke W. Dunbar, Attorney General, Mrs. Patricia H. Maloy, Assistant, for respondent District Court and John H. Galbreath, Judge.

Mr. MARVIN PING, for respondent Irene Clark Whyte.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

THIS is an original proceeding in which a rule issued, directed to the above named respondents, to show cause why the relief prayed for by petitioner should not be granted.

Petitioner alleges that he and the respondent Irene Clark Whyte are members of the Ute Mountain Tribe of the Ute Mountain Reservation Indians; that at all times material to the issues presented each of them was a duly enrolled Indian of said reservation; that respondent Irene Clark Whyte filed a complaint in divorce in the district court of Montezuma county, Colorado, in which she alleged that she and petitioner were married at Towoac, Colorado, on August 5, 1952. Towoac is within the boundaries of the Indian reservation. Petitioner further alleges that he filed a motion to dismiss the divorce action on the ground that the court lacked jurisdiction because the parties to said action were members of the Ute Mountain Tribe of the Ute Mountain Reservation and that they were domiciled on said reservation; that the respondent judge overruled the motion to dismiss; that the members of the Ute Mountain Tribe of the Ute Mountain Reservation Indians are treaty Indians and the State of Colorado has not acted affirmatively to accept jurisdiction over said treaty Indians in accordance with the provisions of the Act of August 15, 1953, c. 505, Sec. 6-7; 67 Stat. 590. It is further alleged that the state court has no jurisdiction over the parties or the subject matter of the action and that the sole jurisdiction to determine the controversy between the parties rests in the tribal court of said tribe of treaty Indians; that in the divorce action respondent Irene Clark Whyte seeks a division of property, support money and attor-

ney's fees. Petitioner alleges that the control of allotted tribal funds is involved, as well as the enforcement of a treaty between the United States and a sovereign nation of Indians, and that the rights of a tribe of treaty Indians to pass upon the legal rights of its members in duly constituted tribal courts is being interfered with by the respondents.

Respondents by answer admit generally the facts set forth in the petition; allege that the petitioner and the plaintiff in the divorce action were "at all times pertinent hereto domiciled in the State of Colorado, residing within the boundaries of the County of Montezuma and the Sixth Judicial District"; and alleged that the district court has "full jurisdiction of the parties and the subject matter involved" in the divorce action. As a second return to the rule respondents allege the following:

"1. That by its Enabling Act the State of Colorado was granted and, through adoption of its Constitution, accepted general civil jurisdiction of Indian Reservations within it boundaries and, further, that the Federal Government has not retained nor asserted jurisdiction of the matter herein involved.

"2. That the Tribal Court of the Ute Mountain Tribe has no jurisdiction of divorce proceedings involving a common law or tribal custom marriage such as the one concerned in Civil Action No. 2791 sought to be prohibited.

"3. That under the Constitution and laws of the United States and the Constitution and laws of the State of Colorado, the respondent Court has full jurisdiction of petitioner Clifford Becher Whyte and repondent Irene Clark Whyte, and of the subject matter of Civil Action No. 2791."

The question to be determined is whether the respondent court has jurisdiction to proceed to judgment in the divorce action. If answered in the affirmative the rule should be discharged. If the answer is in the negative the rule should be made absolute.

■ The Congress of the United States and the duly constituted officers of the federal government since adoption of the Constitution have had the power to regulate dealings with the Indians. The Supreme Court of the United States, speaking through Chief Justice John Marshall in *Worcester v. Georgia,* 6 Pet. (31 U.S.) 515, 8 L. ed. 483, said:

"[The Constitution] confers on Congress the powers of war and peace; of making treaties, and of regulating commerce with foreign nations, and among the several states, and with the Indian tribes. These powers comprehend all that is required for the regulation of our intercourse with the Indians. They are not limited by any restriction on their free actions. The shackles imposed on this power, in the confederation, are discarded."

Under the Constitution of the United States the jurisdiction of the federal government over all Indian affairs is plenary and subject to no diminution by the states in the absence of specific congressional grant of authority to them to act. *United States v. Kagama,* 118 U.S. 375, 6 S. Ct. 1109, 30 L. ed. 228; *United States v. McGowan,* 302 U.S. 535, 58 S. Ct. 286, 82 L. ed. 410; *Perrin v. United States,* 232 U.S. 478, 34 S. Ct. 387, 58 L. ed. 691.

■ As a corollary to federal sovereignty it is clear that state laws have no force within the territory of an Indian tribe in matters affecting Indians. *Patterson v. Council of Seneca Nations,* 245 N. Y. 433, 157 N.E. 734; *Blanset v. Carden,* 256 U.S. 319, 41 S. Ct. 519, 65 L. ed. 950; *Dole v. Irish,* 2 Barb. (N.Y.) 639; *Oklahoma Land Co. v. Thomas,* 34 Ok. 681, 127 P. 8; *Donnelly v. United States,* 228 U.S. 243, 33 S. Ct. 449, 57 L. ed. 820; *Williams v. United States,* 327 U.S. 711, 66 S. Ct. 778, 90 L. ed. 962. As stated by Cohen in his Federal Indian Law at page 120: "It is well settled that the state has no power over the conduct of Indians within the Indian country, whether or not the conduct is of special concern to the federal government."

The case of *Williams v. Lee,* 358 U.S. 217, 79 S. Ct. 269, 3 L. ed. (2d) 251, decided by the Supreme Court of the United States, January 12, 1959, is the last word on the subject under consideration. We think it controls the instant action. In that case the court held that where a white man entered into a contract with a Navajo Indian on a Navajo Reservation in Arizona, the state courts of Arizona were without jurisdiction to grant relief in an action to recover the agreed price for goods sold by the white man to the Indian. The court's opinion contains the following pertinent language:

"There can be no doubt that to allow the exercise of state jurisdiction here would undermine the authority of the tribal courts over Reservation affairs, and hence would infringe on the right of the Indians to govern themselves. It is immaterial that respondent is not an Indian. He was on the Reservation and the transaction with an Indian took place there. (cit. om.) The cases in this Court have consistently guarded the authority of Indian governments over their reservations. Congress recognized this authority in the Navajos in the Treaty of 1868, and has done so ever since. If this power is to be taken away from them, it is for Congress to do it."

We are in accord with the argument of counsel for petitioner as set forth in their brief:

"Surely, if a non-Indian's rights under a contract made with an Indian on an Indian reservation are subject to the exclusive jurisdiction of the tribal court, it must follow that a contract of marriage entered into on an Indian reservation between two enrolled members of the tribe must be governed by tribal law. The right to determine this dispute arising under the marriage contract is a right reserved to the sovereign nation of the Ute Mountain Tribe of the Ute Mountain Reservation Indians. That right was reserved by treaty with the United States, and, although Congress has now provided a way in which the states can assume the burdens and the jurisdiction over Indian affairs, Colorado has not

taken the requisite affirmative action required by Congress. As was said by Justice Black in *Williams v. Lee,* supra, "To date, Arizona (Colorado) has not accepted jurisdiction, possibly because the people of the State anticipate that the burdens accompanying such power might be considerable.' Not having accepted the jurisdiction, together with its correlative burdens, the State of Colorado and its courts cannot attempt to determine the rights of two enrolled members of the Ute Mountain Tribe of the Ute Mountain Reservation Indians under a marriage contract entered into on the Indian reservation. Only the tribal courts have jurisdiction, and respondents should be enjoined from proceeding further with the state court divorce action."

Respondents seek to distinguish *Williams v. Lee,* supra, from the instant case on several grounds: One claimed distinction is that the Arizona constitution contains a disclaimer of jurisdiction over Indian lands, whereas the Colorado constitution does not. True, Colorado did not disclaim, but it is entirely clear that this failure to do so cannot conceivably result in Colorado jurisdiction over Indian affairs. For instance, in *Donnelly v. United States,* 228 U.S. 243, 33 S. Ct. 449, 57 L. Ed. 820, the defendant, a white man, was charged in federal court under a federal statute, with the murder of a Klamath Indian on that tribe's reservation. Defendant contended that the California state courts had jurisdiction because California was admitted to the Union on the same basis as the original thirteen states, with no *reservation* by Congress of jurisdiction over Indian lands. The Supreme Court rejected this argument, ruling that the state court was without jurisdiction.

The test is not whether a state has disclaimed jurisdiction, but whether Congress has authorized such a jurisdiction within the state. In 1953 Congress adopted an Act (18 U.S.C. Section 1162) which granted to all states the privilege of qualifying for such jurisdiction in Indian affairs. This statute provides in part:

"Notwithstanding the provisions of any Enabling Act for the admission of a State, the consent of the United States is hereby given to the people of any State to amend, where necessary, *their State constitution or existing statutes,* as the case may be, to remove any legal impediment to the assumption of civil and criminal jurisdiction in accordance with the provision of this Act: Provided, That the provisions of this Act *shall not become effective* with respect to such assumption of jurisdiction by any such State *until* the people thereof have appropriately *amended* their State constitution *or* statutes as the case may be.

"The consent of the United States is hereby given to any other State not having jurisdiction with respect to criminal offenses or *civil causes of action,* or with respect to both, as provided in this Act, to assume jurisdiction at such time and in such manner as the people of the State shall, *by affirmative legislative action,* obligate and bind the State to assumption thereof." (Emphasis supplied)

Colorado has not taken the steps mentioned in the statute which are essential prerequisites to jurisdiction in this case.

Another claimed distinction is that the Ute Reservation is within the exterior boundaries of the State of Colorado; but so is every other Indian reservation within the boundaries of one or more states. *United States v. McGratney,* 104 U.S. 621, upon which respondents rely in this connection is clearly distinguishable on the facts. The additional fact that the General Assembly included the Indian reservation within the territorial boundaries of counties, voting precincts, and judicial districts, does not alter the result. The Arizona Indians reservation involved in *Williams v. Lee,* supra, is also within such boundaries. *Harrison v. Laveen,* 67 Ariz. 337, 196 P. (2d) 456; *Denison v. State,* 34 Ariz. 144, 268 Pac. 617.

Our conclusion is that the respondent District Court

was without jurisdiction to hear the divorce action, and the question hereinabove propounded is answered in the negative.

The rule is made absolute.

MR. JUSTICE DAY not participating.