506 P.2d 786

**STATE SECURITIES, INC., Plaintiff-Appellee,**

v.

**Jimmy and Ruby ANDERSON, Defendants-Appellants.**

**STATE SECURITIES, INC., Plaintiff-Appellee,**

v.

**Raymond MIKE, Defendant-Appellant.**

**Nos. 9327, 9328.**

Supreme Court of New Mexico.

Feb. 16, 1973.

Richard W. Hughes, Shiprock, for appellants.

No appearance for appellee.

## OPINION

McMANUS, Chief Justice.

These suits were filed by State Securities, Inc., plaintiff-appellee, in January, 1970, in the magistrate court of San Juan County, Division II, to recover on notes alleged to be due. Jimmy Anderson, Ruby Anderson and Raymond Mike, defendants-appellants, are Navajo Indians who reside on the Navajo Indian Reservation. They answered, alleging in both cases lack of jurisdiction over their persons. The cases were heard in magistrate court and judgment was entered for State Securities, Inc. in both cases. Defendants appealed to the District Court of San Juan County and the cases were consolidated for the purpose of appeal. On motion of plaintiff and after a hearing and entry of stipulated findings of fact, the district court granted summary judgment for plaintiff against all defendants for past due amounts of money, plus costs and attorney fees. From that judgment, entered on May 28, 1971, defendants appeal.

The question presented is: May New Mexico state courts obtain jurisdiction over an Indian residing on an Indian reservation established by the United States government by issuing and serving process upon the Indian while he is on the reservation, such Indian having entered into a contract while off the reservation and in this state.

We believe that such jurisdiction is proper and our reasons may be found in the answers to three questions: (1) Has Congress denied jurisdiction to New Mexico state courts? (2) Has New Mexico disclaimed jurisdiction? (3) Would this

jurisdiction infringe on the right of the Indians to govern themselves?

Congress has not denied jurisdiction to New Mexico state courts. The United States Constitution, art. I, § 8, cl. 3, gives Congress the power "To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes, * * *."

In 25 U.S.C.A. § 2, Congress delegated its authority in these words:

"The Commissioner of Indian Affairs shall, under the direction of the Secretary of the Interior, and agreeably to such regulations as the President may prescribe, have the management of all Indian affairs and of all matters arising out of Indian relations."

Pursuant to this authority, the Bureau of Indian Affairs issued the following regulation:

"The Courts of Indian Offenses shall have jurisdiction of all suits wherein the defendant is a member of the tribe or tribes within their jurisdiction, and of all other suits between members and non-members which are brought before the courts by stipulation of both parties. [25 CFR § 11.22]."

25 CFR § 11.1(e) further states:

"Nothing in this section shall prevent the adoption by the tribal council of ordinances applicable to the individual tribe, and after such ordinances have been approved by the Secretary of the Interior they shall be controlling, and the regulations of this part which may be inconsistent therewith shall no longer be applicable to that tribe."

Such ordinances have been adopted by the Navajo Tribal Council and approved by the Secretary of the Interior through the Commissioner of Indian Affairs. Title 7 of the Navajo Tribal Code, § 133, states, in part:

"The Trial Court of the Navajo Tribe shall have original jurisdiction over:

" * * * *

"(b) Civil Causes of Action. All civil actions in which the defendant is an Indian and is found within its territorial jurisdiction."

We believe that 25 CFR § 11.22 and Title 7 of the Navajo Tribal Code, § 133, confer original but not exclusive jurisdiction. There are two important reasons. First, providing Indian courts with exclusive jurisdiction in every action where an Indian is a defendant would be establishing abnormal jurisdiction, both in terms of what is presently exercised by other governmental units in the United States and what is necessary to achieve justice. Second, even the United States Supreme Court, construing the words "absolute jurisdiction and control," has decided that "absolute" federal jurisdiction is not invariably exclusive jurisdiction. Organized Village of Kake v. Egan, 369 U.S. 60, 82 S.Ct. 562, 7 L.Ed.2d 573 (1962). In the case before us the Indian court jurisdiction is not claimed to be exclusive, much less "absolute."

New Mexico has not disclaimed jurisdiction. The New Mexico Constitution, art. XXI, § 2, states, in part, "The people inhabiting this state do agree and declare that they forever disclaim all right and title to * * * all lands * * * owned or held by any Indian or Indian tribes * * *." In Kake, supra, the Supreme Court of the United States, in an opinion authored by Justice Frankfurter, held that "The disclaimer of right and title by the State was a disclaimer of proprietary rather than governmental interest." The Court was concerned at that time with the Alaska disclaimer, substantially similar to that of New Mexico. In the case before us, issuance and service of process is unrelated to any proprietary interest.

This jurisdiction would not infringe on the right of Indians to govern themselves. We have held, supra, that governing acts of Congress, through rules and regulations issued by the Bureau of Indian Affairs and further established in the Navajo Tribal Code do not confer exclusive juris-

diction upon the Indian courts. Congress has therefore not prohibited jurisdiction by state courts. Now, we consider Williams v. Lee, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed. 2d 251 (1959), which says:

"Essentially, absent governing Acts of Congress, the question has always been whether the state action infringed on the right of reservation Indians to make their own laws and be ruled by them."

New Mexico has recognized and applied this test in Montoya v. Bolack, 70 N.M. 196, 372 P.2d 387 (1962).

In an attempt to determine whether Indian immunity from process is necessary in this case to protect the right of reservation Indians to make their own laws and be ruled by them, we have surveyed a number of cases and other authorities. According to some court decisions some powers reserved to Indians for their exclusive jurisdiction, and which may therefore be necessary for Indian self-government, are: jurisdiction to try an offense committed on the reservation by or against an Indian, Williams v. United States, 327 U.S. 711, 66 S.Ct. 778, 90 L.Ed. 962 (1946); extradition powers, if a tribe has codified and exercises its own extradition law, Arizona ex rel. Merrill v. Turtle, 413 F.2d 683 (9th Cir. 1969), cert. denied 396 U.S. 1003, 90 S.Ct. 551, 24 L.Ed.2d 494 (1970); authority to determine tribal membership subject only to the supervision and control of the federal government, Martinez v. Southern Ute Tribe of the Southern Ute Reservation, 249 F.2d 915 (10th Cir. 1957), cert. denied 356 U.S. 960, 78 S.Ct. 998, 2 L.Ed.2d 1067 (1958); right to control presence within Indian territory of non-Indians, Morris v. Hitchcock, 194 U.S. 384, 24 S.Ct. 712, 48 L.Ed. 1030 (1904); control of use of peyote on the reservation, Native American Church v. Navajo Tribal Council, 272 F.2d 131 (10th Cir. 1959); jurisdiction over an accident on the reservation between two Indians, Valdez v. Johnson, 68 N.M. 476, 362 P.2d 1004 (1961); jurisdiction over a divorce action between two Indians on the reservation, Whyte v. District Court, 140

Colo. 334, 346 P.2d 1012 (1959); civil jurisdiction over Indian defendants and non-Indian plaintiffs in cases concerning contract obligations which arise on the reservation, Williams v. Lee, supra; annexation of leased Indian lands by a municipality for the purpose of imposing sales taxes held unlawful, Your Food Stores, Inc. (NSL) v. Espanola, 68 N.M. 327, 361 P.2d 950 (1961); jurisdiction over tribal elections, Motah v. United States, 402 F.2d 1 (10th Cir. 1968); and tribes themselves are recognized as being immune from suit, Haile v. Saunooke, 246 F.2d 293 (4th Cir. 1957).

Powers not reserved to Indians for their exclusive jurisdiction appear to be: jurisdiction to try suits by Indians against outsiders in state courts, Felix v. Patrick, 145 U.S. 317, 12 S.Ct. 862, 36 L.Ed. 719 (1892); jurisdiction to try non-Indians who commit crimes against each other on a reservation, New York ex rel. Ray v. Martin, 326 U.S. 496, 66 S.Ct. 307, 90 L.Ed. 261 (1946); service of process on an Indian if he is on privately leased land, Batchelor v. Charley, 74 N.M. 717, 398 P.2d 49 (1965); taxation of income of Indians who derive all of their income from their employment on the reservation, Ghahate v. Bureau of Revenue, 80 N.M. 98, 451 P.2d 1002 (1969); jurisdiction of Indians off the reservation who violate state laws, Trujillo v. Prince, 42 N.M. 337, 78 P.2d 145 (1938); jurisdiction where an Indian sues a non-Indian for personal injuries and wrongful death resulting from an accident on the reservation, Paiz v. Hughes, 76 N.M. 562, 417 P. 2d 51 (1966); service of process on a reservation in a suit between two non-Indians in a territorial court, Langford v. Monteith, 102 U.S. 145, 26 L.Ed. 53 (1880); taxation of property belonging to non-Indians on the reservation, Utah & Northern Railway v. Fisher, 116 U.S. 28, 6 S.Ct. 246, 29 L.Ed. 542 (1885); enforcement of the New Mexico Revised Uniform Reciprocal Enforcement of Support Act against an Indian defendant, Natewa v. Natewa, 84 N.M. 69, 499 P.2d 691 (1972); enforce-

ment by the state of sanitation and quarantine laws on a reservation, inspections for health and educational purposes, and enforcement of compulsory school attendance —all if the tribal governing body consents, 25 U.S.C.A. § 231. Indians may vote in state elections and receive state welfare without impairing the right of Indians to govern themselves, Montoya v. Bolack, supra; Acosta v. San Diego County, 126 Cal.App.2d 455, 272 P.2d 92 (1954).

We believe a reasonable summary of the preceding law, especially as it applies to New Mexico, may be found in Ransom and Gilstrap, Indians—Civil Jurisdiction in New Mexico—State, Federal and Tribal Courts, 1 N.M.Law Rev. 196 (1971). In this scholarly article, the authors conclude:

> "It may be, then, that exclusive Indian jurisdiction exists when an action involves a proprietary interest in Indian land; or when an Indian sues another Indian on a claim for relief recognized only by tribal custom and law; or, subject to the Fourteenth Amendment argument, when an Indian is suing or being sued by another Indian or non-Indian over an occurrence or transaction arising in Indian country about which the Tribe does, or foreseeably will, in the exercise of its police power, assume sovereign control through tribal law, court, or executive action."

In this case there is not a proprietary interest in land, one Indian is not suing another Indian and the transaction did not arise in Indian country.

State jurisdiction does not eliminate Indian jurisdiction, it exists concurrently with it. There is no interference with Indian self-government. Concurrent jurisdiction itself is not new in this state. It exists, for example, between district and probate courts [§ 30–2–24, N.M.S.A.1953 (1971 Pocket Supp.)], and between state and federal courts in appropriate diversity situations. Further, a kind of concurrent jurisdiction between two states is created by such "long arm" statutes as § 21–3–16, N.M.S.A.1953 (1971 Pocket Supp.) where

personal service of process is permitted in the other jurisdiction.

Last, there is an affirmative reason why the state should have jurisdiction. In Natewa, supra, the court said:

> "Appellant cannot interpose his special status as an Indian as a shield to protect him from obligations that result from his marriage to appellee which had been entered into off the reservation."

While the nature of the present case is different, the principle is the same. Exclusive jurisdiction in Indian courts, which do not necessarily apply state law, may result in shielding Indians from obligations incurred off the reservation.

We believe that state jurisdiction is proper in cases between Indians and non-Indians involving contractual obligations incurred off the reservation and we hold that process may be served on Indians while they are within the boundaries of the reservation.

We are cognizant of the recent decision of this court in Sangre de Cristo Development Corporation, Inc. v. City of Santa Fe, 84 N.M. 343, 503 P.2d 323, and of the provisions of 25 U.S.C.A., §§ 1321 through 1324, relating to state assumption of criminal and civil jurisdiction over Indians. We believe that they are not applicable to the facts of this case.

The summary judgment entered by the district court is affirmed.

It is so ordered.

OMAN and STEPHENSON, JJ., concur.

MONTOYA and MARTINEZ, JJ., dissenting.

MONTOYA, Justice (dissenting):

I cannot agree with the conclusions arrived at in the majority opinion. The majority has decided that the New Mexico state courts may obtain jurisdiction over an Indian residing on an Indian reservation established by the United States government, by issuing and serving process

upon the Indian while he is on the reservation. In this case, the transaction from which the cause of action arose occurred outside of the reservation.

Without attempting to fully discuss the historical development of the concept of state and federal court jurisdiction over reservation Indians, a brief review of how their legal status developed is in order. The Indians have long been recognized to have special status creating responsibilities for their welfare on the part of the federal government. Article I, § 8, of the United States Constitution vested in Congress exclusive power to regulate commerce "with the Indian Tribes," placing them on the same basis as foreign nations or, as respects commerce, among the several states. In Worcester v. State of Georgia, 31 U.S. (6 Pet.) 515, 8 L.Ed. 483 (1832), while interpreting this section, Chief Justice Marshall, in reversing a Georgia court judgment against a white man charged with violating a Georgia law requiring the procurement of a license from that state to inhabit the Indian territory, stated:

"The Cherokee nation, then, is a distinct community, occupying its own territory, with boundaries accurately described, in which the laws of Georgia can have no force, and which the citizens of Georgia have no right to enter, but with the assent of the Cherokees themselves, or in conformity with treaties, and with the acts of congress. The whole intercourse between the United States and this nation, is, by our constitution and laws, vested in the government of the United States. The act of the State of Georgia, under which the plaintiff in error was prosecuted, is, consequently void, and the judgment a nullity. * * *"

The same concept, expressed by Chief Justice Marshall, formed the basis of subsequent decisions, culminating in Williams v. Lee, 358 U.S. 217, 79 S.Ct. 269, 3 L. Ed.2d 251 (1959), which developed the so-called "infringement test" and held that the state courts of Arrizona had no jurisdiction over a civil action brought by a non-Indian licensed as a trader on the Navajo Reservation against an Indian for merchandise sold on the Reservation, holding that the exercise of jurisdiction would "infringe on the right of the Indians" to make their own laws and govern themselves. The majority, in citing Williams v. Lee, supra, quote the following as being applicable to the issue now before us:

"Essentially, *absent governing Acts of Congress,* the question has always been whether the state action infringed on the right of reservation Indians to make their own laws and be ruled by them. (Citation omitted.)" (Emphasis added.)

The majority recognizes that we applied this same test in Montoya v. Bolack, 70 N.M. 196, 372 P.2d 387 (1962).

In considering the "infringement. test," we must, of necessity, consider what forms of tribal self-government are involved which bear upon the problem at hand. The Navajo Tribe, with approval of the federal government, asserts and exercises jurisdiction over members of the tribe living on lands within the exterior boundaries of the Reservation. 25 C.F.R. § 11.22, enacted pursuant to congressional authority, contained in 25 U.S.C.A. §§ 2 and 9, provides as follows:

"The Courts of Indian Offenses shall have jurisdiction of *all suits wherein the defendant is a member of the tribe or tribes within their jurisdiction,* and of all other suits between members and nonmembers which are brought before the courts by stipulation of both parties. * * *" (Emphasis added.)

The Tribal Council of the Navajo Nation has adopted its system of tribal courts pursuant to federal standards and directives. Title 7 of the Navajo Tribal Code, § 133(b), reads:

"The Trial Court of the Navajo Tribe shall have original jurisdiction over: * * * (b) *Civil Causes of Action.* All civil actions in which the defendant is an Indian and is found within its territorial jurisdiction."

The above section was enacted by the Navajo Tribal Council and approved by the Secretary of the Interior (through the Commissioner of Indian Affairs) by letter dated March 23, 1959.

Though the transaction which was in issue in Williams v. Lee, supra, occurred within the reservation, there is nothing in Williams, which indicates that the place where the transaction occurred is the key to jurisdiction. In the instant case it would appear that one can logically conclude that the important consideration is that the defendant is an Indian subject to tribal court jurisdiction, and that the tribal court was established under the authority of federal law and applicable regulations. In Williams v. Lee, supra, the following quotation is significant:

> "* * * Today the Navajo Courts of Indian Offenses exercise broad criminal and civil jurisdiction which covers suits by outsiders against Indian defendants. No Federal Act has given state courts jurisdiction over such controversies. * * *"

While the Williams case, supra, dealt with jurisdiction over subject matter rather than the issue of personal jurisdiction, which confronts us in the instant case, Williams does not draw any distinction between the two types of jurisdiction. Subsequent cases apply the principles laid down in Williams to matters involving personal jurisdiction. In Arizona ex rel. Merrill v. Turtle, 413 F.2d 683 (1969), cert. denied, 396 U.S. 1003, 90 S.Ct. 551, 24 L.Ed.2d 494 (1970), Oklahoma authorities requested extradition of a Cheyenne Indian residing on the Navajo Reservation in Arizona, who was charged with committing the offense of second degree forgery in Oklahoma. Citing the Navajo Tribal Code as authority, the Navajo Tribal Council refused Oklahoma's request. It is of interest to note that the Navajo Tribal Code allowed extradition to Utah, Arizona and New Mexico only. The State of Oklahoma then made demand upon the Governor of Arizona, who agreed to the extradition and issued the warrant of arrest. The Indian defendant was arrested and confined in the tribal jail. A habeas corpus proceeding testing the legality of the arrest followed and the Arizona Federal District Court held that the state had neither jurisdiction to arrest the defendant, nor the power to extradite him. The Ninth Circuit affirmed and based its conclusion on two grounds. First, it referred to an 1861 Supreme Court decision regarding extradition of slaves and said that, by analogy, tribal self-government was the same as state self-government. The second ground announced by the court was that the state cannot infringe upon "rights essential to the Navajo's self-government." It is interesting to note that the decision cited Williams v. Lee, supra; Kake Village v. Egan, 369 U.S. 60, 82 S.Ct. 562, 7 L.Ed.2d 573 (1962); Littell v. Nakai, 344 F.2d 486 (9th Cir.1965). An analysis of the Turtle decision indicates there is no question but that Arizona's arrest and extradition would have been legal had the arrest occurred outside the Navajo Reservation. The invalidity of the arrest and detention were predicated upon the Indian's presence on the reservation when the arrest was made.

In a law review article entitled "Jurisdiction over Indians and Indian Reservations," appearing in 6 Ariz.L.Rev. 237, the author, Albert E. Kane, then a Policy Review Specialist for the Bureau of Indian Affairs, while questioning the reasoning that jurisdiction attempted to be asserted by the state courts would interfere with tribal self-government, reaches the following conclusion, at page 251, which I believe is significant and enlightening as to the proper disposition to be made in the instant case. Mr. Kane expresses it as follows:

> "It should thus be evident that federal, state and tribal courts may all have jurisdiction over the same subject matter. The government apparently adopts this attitude because its regulations provide that the Court of Indian Offenses may have concurrent jurisdiction in certain

·cases with state and federal courts. However, jurisdiction over the person might not be obtained if process is served in an area over which there is no political sovereignty over the person receiving the process. Thus while a state court might duly serve process on a non-Indian within an Indian reservation, it could not serve it there on an Indian unless the state had assumed full jurisdiction over the reservation pursuant to federal statute."

In addition, I am convinced that if true recognition is to be granted to the principle of self-government, it goes without saying that the existence of a judicial system is both fundamental and essential. The assertion of state judicial power in the instant case would certainly usurp or interfere with the judicial power of the Navajo Tribal Council so essential to the maintenance of effective self-government.

The plaintiff herein is not deprived of the right to file his cause of action in the Navajo tribal courts. He has an adequate remedy provided under their judicial system whose creation has been sanctioned and encouraged by the federal government under appropriate and complete federal statutes and regulations.

Other, more recent cases, have dealt with the question of service of process upon an Indian on the reservation, issued by a state court. In Martin v. Denver Juvenile Court, Colo., 493 P.2d 1093 (1972), the Colorado Supreme Court ruled that a state official lacks authority for service of process over enrolled Indians within the closed portion of a reservation in those states which have not legislated to assume jurisdiction. This was a prohibition proceeding attacking the jurisdiction of a state court over the person of an Indian.

Petitioner, an enrolled member of the Oglala Sioux Indian Tribe residing on the closed portion of the Pine Ridge Indian Reservation in South Dakota, challenged the ruling of the Denver Juvenile Court that it had jurisdiction over him in a paternity suit filed in that court since con-

ception was alleged to have occurred off the reservation and thus he was amenable to service of process.

The court stated that it could find no federal legislation granting state police officers authority over enrolled Indians on the reservation where the cause of action arose off the reservation, except for Pub. L. 83–280, ch. 505, 67 Stat. 589, which allows states to amend existing statutes to remove any legal impediment to the assumption of civil and criminal jurisdiction over Indians. It noted that South Dakota has not implemented that provision and stated that, service of process not being made by an officer having powers and duties within the Indian territory where petition was served, the juvenile court lacks jurisdiction over the person of the petitioner.

The next important query, assuming that the majority is correct in its conclusion that an Indian may be served with state process while on the reservation, is, how can a state court enforce its judgment within the Indian reservation? This power of the state courts has also been seriously questioned, even when an Indian has been duly served with process. Annis v. Dewey County Bank, 335 F.Supp. 133 (S.D.1971), involved an action by an Indian to enjoin enforcement of a state judgment in which the judgment creditor counterclaimed for money due. The judgment was entered by a South Dakota state court on two notes. There was no issue as to service of process involved. A security agreement had been signed by the Indian, and the notes it secured were executed and payable outside the reservation. On the basis of the state court judgment, the sheriff of Dewey County attempted to attach the Indian's livestock on the reservation. The court directly held that state officials have no power to enforce state court judgments on the reservation and granted a permanent injunction prohibiting the enforcement of the judgment against the Indian on the reservation. The defendant judgment creditor claimed state jurisdic-

tion on two grounds. First, in attempting to distinguish Williams v. Lee, supra, and other South Dakota cases which held that South Dakota courts have no jurisdiction over a cause of action arising within Indian country involving an enrolled Indian, the defendant pointed out that the security agreement was signed by plaintiff, that there had been a breach, and proper service of the state court's process. The court disposed of this contention in the following words:

> "This argument fails to recognize that the actual attachment by state officials must be made on the reservation and state officials have no jurisdiction on Indian reservations either to serve process on an enrolled Indian or to enforce a state judgment. (Citations omitted.)"

Therefore, does it not follow as a logical conclusion that many state court judgments against Indians would be meaningless unless there also exists the power by the state to enforce them on the reservation?

I further disagree with the majority in its belief that the provisions of 25 U.S.C. A. §§ 1321 through 1324, are not applicable to the facts of this case. This conclusion ignores the historical concept that the Navajo Indian Tribe has been regarded as a distinct political community, protected by treaty from the laws of any state and subject only to the powers of Congress over Indian affairs. Admittedly, this concept has been modified to permit application of state law in some degree to reservation Indians, but only in matters not considered essential to tribal self-government. Instead of limiting the authority of the tribe over governmental affairs, the federal government has not only assisted in strengthening tribal government but its court system as well. See 25 U.S.C.A. § 1311. Its approval of the Navajo Tribal Code is ample evidence of this fact, coupled with authority for the training of judges of Indian courts. Thus, the basic principle, that ex-

clusive jurisdiction has been retained by the Navajo Tribe over essential matters involving their own self-government in the absence of limitation by the federal government, is established. Congress did indeed provide that state jurisdiction could be extended over reservation Indians, but only upon affirmative action taken by the states together with affirmative tribal consent manifested by the majority vote of the enrolled Indians within the affected area of the Indian country. 25 U.S.C.A. §§ 1322, 1324 and 1326. These enactments by Congress are certainly illustrative of the detailed regulatory standards which Congress has imposed on any extension of state jurisdiction, whether civil or criminal, to actions in which Indians are parties arising in Indian country. See Crow Tribe of Indians v. Deernose, 158 Mont. 25, 487 P.2d 1133 (1971); Kennerly v. District Court of Ninth Judicial District of Montana, 400 U.S. 423, 91 S.Ct. 480, 27 L.Ed.2d 507 (1971); Annis v. Dewey County Bank, supra; Williams v. Lee, supra, and Sangre de Cristo Development Corp., Inc. v. City of Santa Fe, 84 N.M. 343, 503 P.2d 323 (1972).

Under the majority opinion, we are left in the anomalous position of allowing service of state process upon an Indian within the reservation and obtaining a judgment which, under the decided cases, cannot be enforced on the reservation. The statutory scheme provided by the federal government to assume complete civil jurisdiction over Indians seems to me to be the only practical and reasonable solution to this difficult problem. Having failed to take advantage of this statutory alternative, I must hold that the state courts have no personal jurisdiction over an Indian served with process from the state courts within the Navajo Indian Reservation.

For the foregoing reasons, I respectfully dissent from the decision of the majority.

MARTINEZ, J., concurs.