524 P.2d 199 (1974)
86 N.M. 335
GREAT AMERICAN INSURANCE COMPANY, Plaintiff-Appellant, Cross-Appellee,
v.
Fred and Ella BROWN, Defendants-Appellees, Cross-Appellants.
No. 1324.
Court of Appeals of New Mexico.
June 19, 1974.
*200 J.E. Casados, Casados & Robinson, Albuquerque, for plaintiff-appellant and cross-appellee.
Michael Celestre, Crownpoint, for defendants-appellees and cross-appellants.

OPINION
WOOD, Chief Judge.
The two issues concern: (1) jurisdiction over the person and (2) dismissal under § 21-1-1(41)(e), N.M.S.A. 1953 (Repl.Vol. 4).
The complaint alleges: (a) that Ella Brown, while driving an automobile owned by Fred Brown, negligently rear-ended an automobile driven by Wesley; (b) that the accident happened on a street in Gallup, New Mexico; (c) that Wesley was plaintiff's insured; and (d) that plaintiff is subrogated to Wesley's rights. Plaintiff sought recovery for property damage to the Wesley automobile less the amount of a "deductible."

Jurisdiction over the person.
Asserting a lack of jurisdiction over their persons, defendants moved to dismiss. Their motion affirms that process was served upon defendants at their residence and that their residence "is on the Southeast quarter of Section 8, Township 14 North, Range 20 West, County of McKinley, State of New Mexico." See § 21-1-1(4)(e), N.M.S.A. 1953 (Repl.Vol. 4).
This then is a case filed in a New Mexico court based on an accident occurring within the State. Civil process was personally served upon defendants and no claim is made that the method of service was improper.
Defendants' claim is that the place of service was an Indian allotment and that this allotment is held in trust by the federal government "for the use and benefit of Navajo Indians." Defendants assert that process served upon allotted land is invalid because the United States has exclusive jurisdiction over Indians residing on allotted land. Defendants contend, and the trial court found, that defendants are Navajo Indians.
Defendants assert that New Mexico authority to serve process has been preempted by federal law. See Sangre De Cristo Dev. Corp., Inc. v. City of Santa Fe, 84 N.M. 343, 503 P.2d 323 (1972), cert. denied, 411 U.S. 938, 93 S.Ct. 1900, 36 L.Ed.2d 400 (1973). This contention is based on the federal statutes providing for allotments of land to Indians.
The trial court agreed with defendants. It held there was a lack of personal jurisdiction over defendants and dismissed the complaint. Plaintiff appeals.
In contending that service of process upon defendants was valid, plaintiff relies on State Securities, Inc. v. Anderson, 84 N.M. 629, 506 P.2d 786 (1973). That case involved a reservation Indian who was served with New Mexico process while physically within the reservation. State Securities, Inc. is not applicable for two reasons. The first reason is that no reservation is involved in this case. Here, service was made on an Indian allegedly residing on an Indian allotment. The second reason is that the federal statutes on which defendants rely were not involved in State Securities, Inc.
25 U.S.C.A. § 334 provides for allotments to Indians not residing on reservations. 25 U.S.C.A. § 348 provides for the issuance of patents:
"... in the name of the allottees, which patents shall be of the legal effect, and declare that the United States does and will hold the land thus allotted ... in trust for the sole use and benefit of the Indian to whom such allotment shall have been made, or, in case of his decease, of his heirs...."
25 U.S.C.A. § 349 refers to the issuance of a patent in fee at the expiration of the trust period. A proviso to 25 U.S.C.A. § 349 states:
"... That until the issuance of fee-simple patents all allottees to whom trust patents shall be issued shall be subject *201 to the exclusive jurisdiction of the United States: ..."
Plaintiff does not contradict defendants' claim that the quarter section of land described earlier in this opinion is subject to a trust patent. The inference is that no fee simple patent has been issued. Defendants' claim of federal preemption is based on the words in 25 U.S.C.A. § 349  "exclusive jurisdiction of the United States."
There are two reasons why the trial court erred in dismissing the complaint for lack of jurisdiction over the persons of the defendants. The first reason involves the showing made to the trial court. The second reason involves the meaning of 25 U.S.C.A. § 349.
Defendants' motion to dismiss was filed January 26, 1970. The motion to dismiss was supported by a copy of the land record covering the quarter section identified as subject to the trust patent. The copy is certified to be "an exact copy" as of January 20, 1970. This land record shows the land allotment was made to a female identified as "Zonnie aka Rose Tom, or Rose Joe." The allotment to Zonnie was approved January 21, 1921, and the trust patent is dated February 12, 1921.
The statutory language is narrower than defendants' broad claim that allotted land is for the benefit of Indians generally and that "exclusive jurisdiction" pertains to all Indians on allotted land. Under 25 U.S.C.A. § 348 the United States holds the allotted land in trust for "the Indian to whom such allotment shall have been made" or the heirs of that Indian. The "exclusive jurisdiction" of 25 U.S.C.A. § 349 is over the allottee. The first reason that dismissal was erroneous is that nothing in this record shows that defendants are the allottees of the quarter section, or heirs of the allottee. Absent such a showing, the "exclusive jurisdiction" language is not applicable to them.
Various federal statutes regulate Indian allotments. For example: (All the sections hereinafter cited are in Title 25, U.S.C.A.). Section 341 concerns rights of way through allotments; § 343 concerns correction of errors; § 344 concerns cancellations; § 345 concerns actions for allotments; § 350 concerns surrender of patents; § 354 concerns nonliability of the allotted land for debts; § 357 concerns condemnation of allotted land for a public purpose. The "exclusive jurisdiction" language of § 349 must be considered in the context of the various sections pertaining to allotments. Within that context, the language of § 349 providing that the allottee is subject to the exclusive jurisdiction of the United States does not mean for all purposes. The second reason that dismissal was erroneous is that the "exclusive jurisdiction" provision of § 349 pertains to the allottee qua allottee. Compare United States v. Nice, 241 U.S. 591, 36 S.Ct. 696, 60 L.Ed. 1192 (1916); United States v. Pelican, 232 U.S. 442, 34 S.Ct. 396, 58 L.Ed. 676 (1914). This case involved an automobile accident in Gallup, New Mexico. Neither the allotment nor the status of any allottee is involved. Compare Batchelor v. Charley, 74 N.M. 717, 398 P.2d 49 (1965).
We hold that 25 U.S.C.A. § 349 does not preempt New Mexico authority to serve process on Indian allotments where the process served is in a case which involves neither the allotted land nor the status of the allottee as allottee.

Dismissal under § 21-1-1(41)(e), supra.
Section 21-1-1(41)(e), supra, pertains to dismissal of a civil action where a plaintiff has failed to take action to bring the proceeding to a final determination for a period of three years after the proceeding was filed. The complaint was filed December 11, 1969. On December 22, 1972, defendants moved to dismiss under § 21-1-1(41)(e), supra.
Defendants contend the trial court erred in failing to dismiss the complaint under § 21-1-1(41)(e), supra. They assert that this point is raised under § 21-2-1(17)(2), N.M.S.A. 1953 (Repl.Vol. 4).
The record does not show a ruling by the trial court on this point. However, we *202 are assured that the trial court did rule, and its ruling was to deny the motion.
Assuming that a ruling was made, and assuming that the motion was denied, the ruling was correct. The point need not be discussed in detail. Two decisions of the New Mexico Supreme Court are applicable and controlling. They are: Dunham-Bush, Inc. v. Palkovic, 84 N.M. 547, 505 P.2d 1223 (1973); State ex rel. Reynolds v. Molybdenum Corp. of Amer., 83 N.M. 690, 496 P.2d 1086 (1972).
The order dismissing the complaint for lack of jurisdiction over the persons of defendants is reversed. The cause is remanded with instructions to set that order aside and reinstate the complaint on the docket.
It is so ordered.
HENDLEY, J., specially concurs.
LOPEZ, J., specially concurs.
HENDLEY, Judge (specially concurring).
I concur in the result reached on the issue of jurisdiction over the person but for different reasons.
Under 25 U.S.C.A. § 349 only "... allottees to whom trust patents shall be issued shall be subject to the exclusive jurisdiction of the United States...." The trust patent is issued to "... the Indian to whom such allotment shall have been made, or, in case of his decease, [to] ... his heirs according to the laws of the State or Territory where such land is located...." 25 U.S.C.A. § 348. The first reason that dismissal was erroneous is that nothing in this record shows that defendants are the allottees of the quarter section or, if the original allottee is dead, heirs under the law of New Mexico. Absent such a showing, the "exclusive jurisdiction" language is not applicable to them.
The "exclusive jurisdiction" proviso, however, does not preclude state jurisdiction in this case. It is our duty to interpret federal statutes so that we give effect to the intent of the legislature and the policy behind the statute. Sinclair Refining Co. v. Atkinson, 370 U.S. 195, 82 S.Ct. 1328, 8 L.Ed.2d 440 (1962), overruled on other grounds in Boys Markets v. Clerks Union, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970); United States v. Bernstein, 179 F.2d 105 (4th Cir.1949); Elizabeth Arden, Inc. v. Federal Trade Commission, 156 F.2d 132 (2nd Cir.1946), cert. denied, 331 U.S. 806, 67 S.Ct. 1189, 91 L.Ed.2d 1828 (1947). To understand that intent and policy we must understand the reason Congress inserted the proviso now at issue.
At the time the original act passed in 1887 all reservation Indians were considered wards rather than citizens of the United States. See preliminary discussion in Matter of Heff, 197 U.S. 488, 25 S.Ct. 506, 49 L.Ed. 848 (1905), overruled in United States v. Nice, 241 U.S. 591, 36 S.Ct. 696, 60 L.Ed. 1192 (1916). The original act contemplated releasing Indians from the wardship and giving them citizenship. It did not have the "exclusive jurisdiction" proviso, but stated: "... [t]hat upon the completion of said allotments and the patenting of the lands to said allottees, each and every member of the respective bands or tribes of Indians to whom allotments have been made shall have the benefit of and be subject to the laws, both civil and criminal, of the State or Territory, in which they may reside ...." (Emphasis added) 24 Stat. 388 (1887). There were two patents issued to the Indians: patents in trust issued at the beginning of the trust term and patents in fee, issued at the end. The United States Supreme Court in Matter of Heff, supra, decided the word "patenting" (emphasized above) referred to the original patent in trust and therefore wardship was to end for allottees at the time they received the patent in trust. Congress did not like the court's interpretation and in the next session (1906) amended the statute to make clear that the wardship was not to end until the end of the trust period *203 but was to continue as it did with reservation Indians. The floor debate in the House establishes that by addition of the words "... subject to the exclusive jurisdiction of the United States ..." Congress meant merely to equalize the status of allottees and reservation Indians. 40 Congressional Record, Vol. 40, p. 3598-3602 (1906).
To read the proviso literally would violate the legislative desire for equal treatment which gave it birth. The United States does not have "exclusive jurisdiction" over reservation Indians. See Mescalero Apache Tribe v. Jones, 411 U.S. 145, 93 S.Ct. 1267, 36 L.Ed.2d 114 (1973); Williams v. Lee, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959); State Securities, Inc. v. Anderson, 84 N.M. 629, 506 P.2d 786 (1973).
Another principle of federal statutory interpretation aids us: The court may look beyond the words of a statute to its purpose if the plain meaning leads to an absurd result. Perry v. Commerce Loan Co., 383 U.S. 392, 86 S.Ct. 852, 15 L.Ed.2d 827 (1966); Knapp v. McFarland, 462 F.2d 935 (2nd Cir.1972). It would be absurd to treat reservation Indians and allottees unequally, particularly since Congress intended to regain equality of treatment by the 1906 amendment.
Further, it is doubtful that Congress meant "exclusive jurisdiction" in the sense now urged upon us when it passed the statute. By well established rule, Indians had the right to sue in state courts before passage of the statute. Felix v. Patrick, 145 U.S. 317, 12 S.Ct. 862, 36 L.Ed. 719 (1892); Bem-Way-Bin-Ness v. Eshelby, 87 Minn. 108, 91 N.W. 291 (1902), appeal dismissed, 191 U.S. 564, 24 S.Ct. 846, 48 L.Ed. 304 (1903). Wa-La-Note-Tke-Tynin v. Carter, 6 Idaho 85, 53 P. 106 (1898). As United States v. Nice, supra, stated about the unamended statute:
"The words, although general, must be read in the light of the act as a whole, and with due regard to the situation in which they were to be applied. That they were to be taken with some implied limitations, and not literally, is obvious."
I would hold that the statute is a directive to treat allottees as we treat reservation Indians. This interpretation is not novel. See State v. Big Sheep, 75 Mont. 219, 243 P. 1067 (1926); State ex. rel. Best v. Superior Ct., 107 Wash. 238, 181 P. 688 (1919).
To determine how reservation Indians are treated in a similar situation we need go no further than State Securities, Inc. v. Anderson, supra. The controlling test stated there is: "... whether the state action infringed on the right of reservation Indians to make their own laws and be ruled by them." Also see Williams v. Lee, supra; compare McClanahan v. Arizona Tax Commission, 411 U.S. 164, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973). The Anderson court found that no such infringement occurs where, as here, the cause of action arises off the reservation and the dispute is between Indian and non-Indian.
LOPEZ, Judge (specially concurring).
Although I agree generally with Chief Judge Wood's opinion, I feel constrained to add a few specific comments of my own. The thrust of defendants' argument, as I read it, is that an allottee can never be sued in state court because of the "exclusive jurisdiction" language of § 349, supra. The simple answer to this contention is that the mere showing that a party is an allottee, without more, has never been sufficient to defeat jurisdiction in the state courts. Guardianship of Prieto v. City of Palm Springs, 328 F. Supp. 716 (C.D.Cal. 1971); Smith v. Northern Pac. Ry. Co., 57 Mont. 14, 186 P. 684 (1919); see Bonnett v. Seekins, 126 Mont. 24, 243 P.2d 317 (1952). The "exclusive jurisdiction" language must be read in the context of the General Allotment Act. United States v. Nice, supra. The cause of action must bear some relation to the allotment before that language applies. Here it does not.
The more difficult problem, which is not raised directly by this appeal, is the extent *204 to which the allotment or the allottee must be involved before the "exclusive jurisdiction" language applies. Chief Judge Wood's opinion states that it, "... pertains to the allottee qua allottee...." I do not feel that this language is sufficiently specific to provide necessary guidance in future cases. My view, briefly, is that in actions involving the allottee arising on the allotment, as well as actions involving title to the allotment and determining heirship to the allotment, federal jurisdiction applies.