Marilyn Youngbird Executive Director Colorado Commission of Indian Affairs Executive Chambers Denver, CO 80202
Dear Ms. Youngbird:
This is in response to your letter of January 3, 1980, requesting an attorney general's opinion regarding the responsibility of the State of Colorado to provide services to Indian reservations. Your specific concerns centered around three areas — coroner services, involuntary mental health commitments, and education.
QUESTIONS PRESENTED AND CONCLUSIONS
Your request for an attorney general opinion presents the general question of the responsibility of the State of Colorado to provide governmental services to Indians residing on Indian reservations. You raise three specific areas of concern:
1. Does the state or its political subdivisions have a responsibility to provide coroner services on the Indian reservations?
 My conclusion is that the county coroners and the state do not have jurisdiction over tribal reservation lands. A service agreement between the tribes and the county coroners could be entered into for coroner services.
2. What is the state's responsibility for involuntary commitment of allegedly mentally ill Indians residing on the reservations?
 My conclusion is that unless the Indian tribe were to consent to jurisdiction in this area, the state cannot involuntarily commit Indians who reside on Indian reservations.
3. Can the State Department of Education require school districts to comply with federal legislation by requiring the local districts to establish policies and procedures to ensure participation of Indian parents and tribes in the education process?
 This question is asked in the context of state authority to mandate that local school districts comply with conditions established by special federal legislation for local school district receipt of federal Indian educational program funds. It is my conclusion that although the state board of education has general supervisory authority over the school districts, a specific remedy has been provided in federal legislation for direct relief to the Indian tribes.
ANALYSIS
Until recently, Indian reservations were viewed as foreign states within the boundaries of states, free from the powers and jurisdiction of the states. Worchester v. Georgia,31 U.S. 515 (1832). Jurisdiction of the United States was seen as plenary over Indian affairs and state laws had no force or effect within the territory of an Indian tribe in matters affecting Indians. Whyte v. District Court of Montezuma County,140 Colo. 334, 346 P.2d 1012 (1959). This total territorial sovereignty has eroded to some degree. There is now an implicit recognition that a state can extend its powers into Indian reservations to a limited degree, although there is a firm limit beyond which a state cannot constitutionally do so. SeeWilliams v. Lee, 358 U.S. 217 (1959).Williams set the standard as to what state power can extend into Indian tribal land. This test has two parts: first, a state cannot extend its powers into Indian reservations if it will thereby infringe upon the right of the Indian people to govern themselves; second, a state cannot exercise a power in Indian tribal territory if the federal government has preempted the particular field of activity over which the state attempts to extend its power. Williams, supra.
In 1968, Congress passed the Indian Civil Rights Act, 25 U.S.C. § 1321et seq. The Act constituted consent by the United States for states to assume some civil or criminal jurisdiction with the consent of the Indian tribe affected.Id. Consent must be by majority vote of the enrolled Indians within the affected area. Kennerly v. DistrictCourt of Montana, 400 U.S. 423 (1971). This consent has not occurred in either the Southern Ute Indian tribe or the Ute Mountain Ute tribe. Therefore, the State of Colorado's responsibility towards the tribes in the concerned areas must be analyzed under the standard of Williams v. Lee,supra, rather than the Indian Civil Rights Act. The questions, then, are whether or not the intrusion of the state in the outlined areas infringe upon rights of tribal self-government or if the federal government has preempted the particular area of activity.
The first question concerns coroner services. Colorado requires a death certificate for every death that occurs in the State of Colorado. C.R.S. 1973, 25-2-110. In certain cases, the coroner must sign the required statement of the cause of death.Id. A problem arises because funeral homes not on the Indian reservation will not accept a body unless a death certificate is signed. The intrusion of the state upon the right of the tribe to self-government in the affairs of vital statistics and investigations of suspicious or unusual circumstances of death is obvious. Thus, the state and its political subdivisions have no jurisdiction over such matters because it would undermine the authority of the tribe in this area. This problem could be remedied, however, by a limited service contract between the county coroners involved and the tribes.
The second area about which you inquire is involuntary commitment of allegedly mentally ill persons. The commitment procedure draws the power of the state deep into the lives of the persons involved in the process. White v. Califano,437 F. Supp. 543 (D.C.S.D. 1977). "A person involuntarily committed is torn away from family, friends and community; . . . . One can scarcely conceive how the power of the state could be brought to bear upon a person with any greater severity." Id. at 549. Consequently, imposition of the state's involuntary commitment procedure also infringes on the right of the Indian people to govern themselves.
Therefore, in order for the state to assume jurisdiction of commitment procedures over allegedly mentally ill tribal Indians, the Indian tribe would have to consent to let the state assume that jurisdiction, pursuant to 25 U.S.C. § 1322, by majority vote of the enrolled Indians. Kennerly,supra. (It should be noted that this is an area which also may be preempted by the federal government because of its duty to provide health care to Indians. See White v.Califano, supra.) Neither is it possible for the tribal judicial system to make the determination of mental illness and then have the state accept those Indians for treatment. That scheme would allow the Indian judicial system to make the determination of assumption of jurisdiction rather than the tribe making that determination as required by statute.See White v. Califano, supra.
Your last question involves educational responsibilities.20 U.S.C. § 236 provides entitlements to local educational agencies (LEAs) for Indian children who reside on Indian reservations. 20 U.S.C. § 240 requires the LEA to establish certain policies and procedures to ensure participation of Indian parents and tribes in the education process. You question whether the state has the authority to require the LEA to comply with this federal legislation. Although C.R.S. 1973, 22-7-106(1)(a) allows the state board to exercise general supervision of the public schools, it should be pointed out that the federal legislation itself provides the mechanism for the Indian tribe to complain to the federal government regarding any action of an LEA pursuant to the statute. 20 U.S.C. § 240. Therefore, although the state board has general supervisory authority over the school districts, a specific remedy has been provided in federal legislation for direct relief to the Indian tribes.
SUMMARY
The relation of the state to Indian tribes is precarious when the jurisdiction of the state is to be extended to the Indian reservation. Without the tribe voting to extend that jurisdiction, it may be extended only in limited situations. In reference to coroner services, a service contract could be signed between the county coroners and the tribe for certain limited services. In the mental health commitment area, the tribe would have to allow the state to extend its jurisdiction to the reservation before the state could involuntarily commit Indian reservation residents. In the area of education, the State Board of Education has general supervisory powers over school districts but a specific remedy is given directly to the Indian tribes by federal legislation.
Very truly yours,
 J.D. MacFARLANE Attorney General
INDIANS CORONERS MENTAL HEALTH
25 U.S.C 1321 et seq.20 U.S.C 23620 U.S.C 240
C.R.S. 1973, 25-2-110
C.R.S. 1973, 22-7-106(1)(a)
EXECUTIVE BRANCH Governor, Office of Indian Affairs, Gov Office
The state's authority to infringe upon tribal territory and autonomy to become involved on issues of education, mental health commitment and coroner's services is limited pursuant to federal law and case law.